UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GANESH KASILINGAM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TILRAY, INC., BRENDAN KENNEDY, and MARK CASTANEDA,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Ganesh Kasilingam ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (as defined herein), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls, and announcements made by Defendants, U.S. Securities and Exchange Commission ("SEC") filings, wire, and press releases published by and regarding Tilray, Inc. ("Tilray" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Tilray securities between January 15, 2019 and March 2, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under

sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.  Tilray was founded in 2013 and is headquartered in Toronto, Ontario. The Company engages in the research, cultivation, processing, and distribution of medical cannabis. The Company offers its products to patients, physicians, pharmacies, governments, and hospitals, and to researchers for commercial purposes, as well as compassionate access and clinical research applications.

3.  On January 15, 2019, Tilray issued a press release announcing entry into a marketing and revenue sharing agreement with Authentic Brands Group LLC ("ABG"), "an owner of a portfolio of global lifestyle and entertainment brands" (the "ABG Agreement").

4.  Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the purported advantages of the ABG Agreement were significantly overstated; (ii) the underperformance of the ABG Agreement would foreseeably have a significant impact on the Company's financial results; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.  On March 2, 2020, Tilray issued a press release announcing the Company's financial results for the fourth quarter and full year 2019. Among other results, Tilray reported a net loss for the year of $321.2 million, or $3.20 per share, compared to $67.7 million, or $0.82 per share, for 2018. In addition, Tilray disclosed that "the Company recorded non-cash charges of $112.1 million related to impairment of the Authentic Brands Group LLC ('ABG') agreement as well as $68.6 million in inventory reserves."

6. On this news, Tilray's stock price fell $2.33 per share, or 15.18%, to close at $13.02 per share on March 3, 2020.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members (as defined herein) have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8. The claims asserted herein arise under and pursuant to sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and section 27 of the Exchange Act.

10. Venue is proper in this District pursuant to section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).

11. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

12. Plaintiff, as set forth in the attached Certification, acquired Tilray securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13. Defendant Tilray is incorporated in Delaware, and the Company's principal executive offices are located at 1100 Maughan Road, Nanaimo, British Columbia, Canada. Tilray's common stock trades on the NASDAQ under the ticker symbol "TLRY."

14. Defendant Brendan Kennedy ("Kennedy") has served at all relevant times as the Chairman, President, and Chief Executive Officer ("CEO") of the Company. Defendant Kennedy sold 643,000 shares of Tilray common stock during the Class Period.

15. Defendant Mark Castaneda ("Castaneda") has served at all relevant times as the Chief Financial Officer ("CFO") and Treasurer of the Company. Defendant Castaneda sold 80,000 shares of Tilray common stock during the Class Period.

16. Defendants Kennedy and Castaneda are sometimes referred to herein collectively as the "Individual Defendants."

17. The Individual Defendants possessed the power and authority to control the contents of Tilray's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Tilray's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Tilray, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

18. Tilray and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background**

19. Tilray engages in the research, cultivation, processing, and distribution of medical cannabis. The Company offers its products to patients, physicians, pharmacies, governments, and

hospitals, and to researchers for commercial purposes, as well as compassionate access and clinical research applications.

**Materially False and Misleading Statements Issued During the Class Period**

20. On January 15, 2019, Tilray issued a press release announcing its entry into the ABG Agreement. The press release stated, in relevant part:

> NANAIMO, British Columbia--(BUSINESS WIRE)--Today, Tilray, Inc. (NASDAQ: TLRY), a global pioneer in cannabis production and distribution, and Authentic Brands Group (ABG), an owner of a portfolio of global lifestyle and entertainment brands, announced that they have signed a long-term revenue sharing agreement to market and distribute a portfolio of consumer cannabis products within ABG's brand portfolio in jurisdictions where regulations permit.
>
> As the owner of more than 50 brands, ABG builds value by partnering with an expansive network of best-in-class manufacturers, operators and retailers. With a global retail footprint of over 100,000 points of sale and more than 4,500 branded freestanding stores and shop-in-shops, ABG's portfolio generates approximately US$9 billion in retail sales annually. Reaching nearly 250 million social media followers across key digital platforms, ABG's robust marketing arm drives growth and engagement for its portfolio, including connecting its brands with over 150 million targeted followers through Winston, its proprietary micro-influencer network.
>
> Under the terms of the agreement:
>
> - The parties will leverage ABG's portfolio of brands to develop, market and distribute consumer cannabis products across the world, as and where legal, with an immediate focus on opportunities, including CBD, in Canada and the U.S. subject to applicable and brand appropriate regulations.
>
> - Tilray will be the preferred supplier of active cannabinoid ingredients for such products.
>
> - Tilray will initially pay to ABG US$100 million and up to US$250 million in cash and stock, subject to the achievement of certain commercial and/or regulatory milestones.
>
> - Tilray will have the right to receive up to 49% of the net revenue from cannabis products bearing ABG brands, with a guaranteed minimum payment of up to US$10 million annually for 10 years, subject to certain commercial and/or regulatory milestones.

> Through this agreement, ABG and Tilray join forces at the intersection of science and brand to connect consumers with innovative health and wellness products suited to their many lifestyle needs.
>
> "We are thrilled to partner with ABG, a global leader known for expertly managing and marketing an owned portfolio of iconic brands," said Brendan Kennedy, Tilray President and CEO. "As we work to expand Tilray's global presence, this agreement leverages our complementary strengths and will be accretive to our shareholders as we reach new consumers across the entertainment, fashion, beauty, home and health and wellness sectors. We look forward to working with ABG to bring unique and sought-after branded cannabis products to the marketplace." Daniel W. Dienst, ABG Executive Vice Chairman, said, "Tilray's unyielding focus on science, product quality, operational excellence and innovation has allowed them to quickly emerge as a leader in the cannabis industry. We see extraordinary potential for cannabis in the fast-growing health and wellness category – particularly for CBD products in the United States and around the world - and are excited about this long-term partnership."

21. On March 18, 2019, Tilray issued a press release reporting its financial results for the full year of 2018. The press release touted the Company's entry into the ABG Agreement, describing it as one of Tilray's "Business Highlights" for the year:

> [Tilray] [a]nnounced a long-term revenue sharing agreement with Authentic Brands Group ("ABG") to leverage their portfolio of brands and develop, market and distribute consumer cannabis products across the world. This global partnership will focus on CBD products in the United States and THC/CBD products in Canada, and elsewhere as regulations permit.

22. On March 25, 2019 Tilray filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2018 (the "2019 Form 10-K"). With respect to the ABG Agreement, the 2019 Form 10-K stated:

> [Tilray] currently ha[s], and may expand the scope of, and may in the future enter into, strategic alliances with third parties that we believe will ***complement or augment our existing business***. Examples of such strategic alliances include our agreement with Sandoz AG, joint venture with AB InBev and ***partnership with ABG***.

23. Appended to the 2019 Form 10-K as an exhibit was a signed certification pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, attesting that "[t]he

information contained in [the 2019 Form 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

24. On May 14, 2019, Tilray issued a press release reporting its financial results for the first quarter of 2019. The press release touted the Company's entry into the ABG Agreement, describing it as one of Tilray's "Business Highlights" for the quarter:

> [Tilray] [c]ompleted a long-term revenue sharing agreement with Authentic Brands Group (ABG) to leverage their portfolio of brands and develop, market and distribute consumer cannabis products across the world. The partnership will initially focus on CBD products in the U.S. and THC/CBD products in Canada and expand globally as regulations permit.

25. That same day, Tilray hosted an earnings call with investors and analysts, in which management again touted the strength of ABG's portfolio and the purported benefits of the ABG Agreement, stating that "[o]ur strategic partnership with Authentic Brands Group (ABG) announced in January will leverage ABG's portfolio of more than 50 of the world's most iconic brands, as well as their North American distribution network." The transcript went on to say, "[w]ith Manitoba, ***Authentic Brands Group***, and Live Well, we believe ***we are well-positioned for long-term leadership in the market***."

26. On May 15, 2019, Tilray filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2019 (the "Q1 2019 Form 10-Q"). With respect to the ABG Agreement, the Q1 2019 Form 10-Q stated:

> [Tilray] currently ha[s], and may expand the scope of, and may in the future enter into, strategic alliances with third parties that we believe will complement or augment our existing business. Examples of such strategic alliances include our agreement with Sandoz AG, joint venture with AB InBev and ***partnership with ABG***.

27. Appended to the Q1 2019 Form 10-Q as exhibits were signed certifications by the Individual Defendants, attesting that "[t]he information contained in [the Q1 2019 Form 10-Q]

fairly presents, in all material respects, the financial condition and results of operations of the Company."

28. On August 13, 2019, Tilray filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2019 (the "Q2 2019 Form 10-Q"). With respect to the ABG Agreement, the Q2 2019 Form 10-Q stated:

> [Tilray] currently ha[s], and may expand or reduce the scope of, and may in the future enter into, strategic alliances with third parties that we believe will complement or augment our existing business. Examples of such strategic alliances include our agreement with Sandoz AG, joint venture with AB InBev and ***partnership with ABG***.

29. Appended to the Q2 2019 10-Q as exhibits were signed certifications by the Individual Defendants, attesting that "[t]he information contained in [the Q2 2019 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

30. That same day, Tilray hosted an earnings call with investors and analysts, in which management again touted the strength of ABG's portfolio and highlighted the purported progress of the Company's partnership with ABG, stating:

> [Tilray's] ***strategic partnership with Authentic Brands Group which we announced in Q1 continues to build momentum*** with our first product launch planned for the second half of the year in the United States. The ABG partnership is the first of its kind deal leveraging ABG's portfolio of more than 50 of the world's more iconic brands for the global CBD market.
>
> * * *
>
> [Tilray's] strategy to capitalize on the estimated $22 billion hemp-derived CBD industry in the United States is centered on building a portfolio of trusted brands. With Manitoba Harvest as our foundation, we will continue to add to our portfolio whether it be via acquisitions such as Smith & Sinclair, ***partnerships such as Authentic Brands Group***, or by building our own brands.

31. On November 12, 2019, Tilray hosted an earnings call with investors and analysts, in which management lauded the ABG Agreement, calling it one of the Company's "pillars of

growth" and an "important business driver," and stated that the strategic partnership will "expedite [the Company's] entry into the THC market when legally permitted to do so."

32. On November 13, 2019, Tilray filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2019 (the "Q3 2019 Form 10-Q"). With respect to the ABG Agreement, the Q3 2019 Form 10-Q stated:

> [Tilray] currently ha[s], and may expand or reduce the scope of, and may in the future enter into, strategic alliances with third parties that we believe will complement or augment our existing business. Examples of such strategic alliances include our agreement with Sandoz AG, joint venture with AB InBev and ***partnership with ABG***.

33. Appended to the Q3 2019 Form 10-Q as exhibits were signed certifications by Individual Defendants, attesting that "[t]he information contained in [the Q3 2019 Form 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

34. The statements referenced in ¶¶20-33 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the purported advantages of the ABG Agreement were significantly overstated; (ii) the underperformance of the ABG Agreement would foreseeably have a significant impact on the Company's financial results; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

35. On March 2, 2020, Tilray issued a press release announcing the Company's financial results for the fourth quarter and full year of 2019. Among other results, Tilray reported

a net loss for the year of $321.2 million, or $3.20 per share, compared to $67.7 million, or $0.82 per share, for 2018. In addition, Tilray disclosed that "the Company recorded non-cash charges of $112.1 million related to impairment of the Authentic Brands Group LLC ('ABG') agreement as well as $68.6 million in inventory reserves."

36. On this news, Tilray's stock price fell $2.33 per share, or 15.18%, to close at $13.02 per share on March 3, 2020.

37. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Tilray securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tilray securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Tilray or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Tilray;

- whether the Individual Defendants caused Tilray to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Tilray securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Tilray securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Tilray securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 Promulgated Thereunder Against All Defendants)**

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. This Count is asserted against Defendants and is based upon section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49. During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Tilray securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Tilray securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

50. Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Tilray securities. Such reports, filings, releases, and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Tilray's finances and business prospects.

51. By virtue of their positions at Tilray, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Tilray, the Individual Defendants had knowledge of the details of Tilray's internal affairs.

53. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Tilray. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Tilray's businesses, operations, future financial condition, and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of Tilray securities was artificially inflated throughout the Class Period. In ignorance of the adverse

facts concerning Tilray's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Tilray securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or upon statements disseminated by Defendants, and were damaged thereby.

54. During the Class Period, Tilray securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Tilray securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Tilray securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Tilray securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

55. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

56. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

57. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. During the Class Period, the Individual Defendants participated in the operation and management of Tilray, and conducted and participated, directly and indirectly, in the conduct of Tilray's business affairs. Because of their senior positions, they knew the adverse nonpublic information about Tilray's misstatement of income and expenses and false financial statements.

59. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Tilray's financial condition and results of operations, and to correct promptly any public statements issued by Tilray which had become materially false or misleading.

60. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases, and public filings which Tilray disseminated in the marketplace during the Class Period concerning Tilray's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Tilray to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Tilray within the meaning of section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tilray securities.

61. Each of the Individual Defendants, therefore, acted as a controlling person of Tilray. By reason of their senior management positions and/or being directors of Tilray, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Tilray to engage in the unlawful acts and conduct complained of herein. Each of the Individual

Defendants exercised control over the general operations of Tilray and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

62. By reason of the above conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act for the violations committed by Tilray.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained asa class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 4, 2020

LAW OFFICE OF THOMAS G. AMON

/s/ *Thomas G. Amon*
THOMAS G. AMON
420 Lexington Avenue, Suite 1402
New York, NY 10170
Telephone: (212) 810-2430
E-mail: tamon@amonlaw.com

ROBBINS LLP
BRIAN J. ROBBINS
GREGORY E. DEL GAIZO
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990

Facsimile : (619) 525-3991
E-mail: brobbins@robbinsllp.com
gdelgaizo@robbinsllp.com

Attorneys for Plaintiff

1447220

**CERTIFICATION OF PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAW**

Ganesh Kasilingam ("Plaintiff") declares as to the claims asserted, or to be asserted, under the federal securities laws, that:

1. Plaintiff has reviewed the Class Action Complaint and has retained Robbins LLP as counsel in this action for all purposes, and authorized the filing of the Complaint.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| SECURITY | TRANSACTION (Purchase/Sale) | QUANTITY | TRADE DATE | PRICE PER SHARE/SECURITY |
|---|---|---|---|---|
| | See Attachment | | | |
| | | | | |
| | | | | |
| | | | | |

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

5. Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws within the past three years, unless otherwise stated in the space below:

*In re Stitch Fix, Inc. Sec. Litig.*, No. 18-cv-06208-JD (N.D. Cal.; August 2019).

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

7. Plaintiff represents and warrants that he is fully authorized to enter into and execute this certification.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30 day of April, 2020.

GANESH KASILINGAM

| SECURITY | TRANSACTION (Purchase/Sale) | QUANTITY | TRADE DATE | PRICE PER SHARE/SECURITY |
|---|---|---|---|---|
| Tilray, Inc. | Purchase | 500 | 01/24/2020 | $19.60 |
| Tilray, Inc. | Sale | (500) | 02/11/2020 | $16.82 |
| Tilray, Inc. | Purchase | 800 | 02/14/2020 | $17.25 |
| Tilray, Inc. | Purchase | 200 | 02/14/2020 | $17.13 |
| Tilray, Inc. | Sale | (1000) | 02/19/2020 | $18.44 |
| Tilray, Inc. | Sale | (100) | 02/20/2020 | $19.45 |
| Tilray, Inc. | Sale | (255) | 02/20/2020 | $19.45 |
| Tilray, Inc. | Purchase | 516 | 02/25/2020 | $17.55 |
| Tilray, Inc. | Purchase | 484 | 02/25/2020 | $17.53 |
| Tilray, Inc. | Sale | (1000) | 02/25/2020 | $16.81 |
| Tilray, Inc. | Purchase | 1 | 02/27/2020 | $14.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |