# EXHIBIT 2

1.      Lead Plaintiffs, by their undersigned attorneys, for their Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), make the following allegations against Defendants based upon an investigation conducted by and under the supervision of Co-Lead Counsel for Lead Plaintiffs, which has included, among other things: (i) interviews of former employees of Elan Corporation PLC ("Elan" or the "Company") and Biogen IDEC, Inc. ("Biogen"); and (ii) review and analyses of: Defendants' public filings, including filings with the Securities and Exchange Commission ("SEC"); press releases issued by Defendants; news articles and analysts' reports concerning Defendants; transcripts from conference calls Defendants held with analysts; official records of regulatory actions taken by government agencies concerning Elan; official records in other relevant legal actions; scientific publications and studies; and information received from Freedom of Information Act ("FOIA") requests to the Food and Drug Administration ("FDA").[1]

2.      Except as alleged herein, the underlying information relating to Defendants' misconduct and the particulars thereof is not available to Lead Plaintiffs or the public, but lies within the possession and control of Defendants and other Elan insiders, thus preventing Lead Plaintiffs from further detailing Defendants' misconduct at this time. Lead Plaintiffs believe that substantial additional evidentiary support exists for the allegations set forth herein and will be available to Lead Plaintiffs after a reasonable opportunity for discovery.

I.      **NATURE OF THE ACTION**

3.      Lead Plaintiffs bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all similarly situated persons and entities (collectively,

---

[1]   The FDA is an agency within the U.S. Department of Health and Human Services.

     **ii.**  **Elan and Biogen Admittedly Communicated**
        **Regularly Concerning Issues Related To Tysabri**
        **Pursuant To The Collaboration Agreement**

151. According to the Collaboration Agreement, Defendants were charged with closely monitoring the Tysabri® clinical trials and reporting any adverse events that occurred during the trials. Indeed, James Mullen, Biogen's CEO, admitted in a July 28, 2004 Biogen earnings release that "[w]e and our partner Elan have been meeting regularly to formulate the launch plan [of Tysabri®]. Kelly Martin and I are in frequent communication on a variety of issues."

152. Accordingly, senior executives at Elan, including the Individual Defendants, knew about serious opportunistic infections that occurred in any of the Tysabri® clinical trials by virtue of their duties under the Collaboration Agreement and their positions at Elan.

     **iii.**  **Confidential Sources Have Confirmed That Defendants**
        **Knew That Serious Opportunistic Infections Occurred**
        **During The Tysabri® Clinical Trials**

153. By January 2004, one month prior to Defendants announcing Elan and Biogen's intention to seek fast-track approval of Tysabri®, the Crohn's disease trials and Phase II of the MS trials were completed. By mid-year 2004, one-year data from Phase III of the MS trials had been analyzed. Since the data from the completed trials was unblinded, Defendants had access to, and conducted as a matter of course, an exhaustive analysis of the results in those trials. Accordingly, Defendants knew or recklessly disregarded the opportunistic infections and deaths that occurred during the Tysabri® clinical trials, indicative of severe immunosuppression, discussed above.

154. Confidential sources confirm that Defendants knew of the serious opportunistic infections that occurred during the Tysabri® clinical trials. For example, a neurologist formerly affiliated with the Yale University School of Medicine who was directly involved in the Tysabri® clinical trials for MS ("CS 5") confirmed that several serious opportunistic infections

occurred during the MS and Crohn's disease clinical trials. Among the opportunistic infections that CS 5 recalled, was a cryptosporidiosis infection (an opportunistic infection caused by a parasite) that occurred during the MS trials and pneumocystis carinii pneumonia and atypical mycobacterial infections that occurred during the Crohn's disease trials. In CS 5's opinion, these earlier opportunistic infections constituted significant warnings to the Defendants about how immunosuppressive Tysabri® actually is. None of these opportunistic infections, however, were disclosed to investors or the FDA prior to Tysabri's® approval in November 2004.

155. CS 5 also confirmed that Defendants had had access to the data in the MS trials that were run by Biogen and, thus, were fully aware of opportunistic infections that had arisen during both the MS and the Crohn's Disease trials. CS 4, who participated in the MS trials, similarly confirmed that this witness was informed of serious opportunistic infections that occurred during the Tysabri® Crohn's disease clinical trials as well, including pneumocystis carinii pneumonia and atypical mycobacterial infections. None of these opportunistic infections were disclosed to the public or the FDA prior to Tysabri's® approval in November 2004.

156. Moreover, in CS 5's opinion, many of the problems that occurred with Tysabri® were the result of executives of Elan and Biogen being excessively aggressive in getting Tysabri® to the market. According to CS 5, Biogen executives pushed hard to get fast track designation and initial approval of Tysabri by the FDA with limited safety data.

157. A neurologist involved in the SENTINEL Phase II trial in Glasgow ("CS 6") noted that, during the clinical trials, *it became obvious that continued use of Tysabri® compromised the immune system*. According to CS 6, the Crohn's disease clinical trials revealed that Tysabri® increased the risk of patients developing cancer. CS 6 recalled that five clinical trial participants contracted cancer as compared to one patient in the placebo group. CS 6 was

57