**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

GANESH KASILINGAM, individually and on behalf of all others similarly situated,

Plaintiff,

- against-

TILRAY, INC., BRENDAN KENNEDY, and MARK CASTANEDA,

Defendants.

Case No. 20-cv-03459-PAC

**MEMORANDUM OF LAW IN SUPPORT OF
THE DEFENDANTS' MOTION FOR RECONSIDERATION
AND/OR TO CERTIFY FOR INTERLOCUTORY APPEAL**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................4

I.    The Court Should Reconsider the Second Opinion to Correct Multiple Clear Errors...................................................................................................................4

    A.    Clear Error #1: The Court Applied Rule 8's Plausibility Standard Rather Than the Reform Act's and Rule 9(b)'s Heightened Pleading Standards...........................................................................................................5

    B.    Clear Error #2: The Second Opinion Fails to Scrutinize CW Allegations Under the Correct Second Circuit Standard. ...........................9

    C.    Clear Error #3: The Second Opinion Fails to Articulate or Apply *Omnicare*'s Pleading Standard for Statements of Opinion........................12

    D.    Clear Error #4: The Second Opinion Fails to Apply Second Circuit Precedent on Motive and Opportunity, or to Weigh All Competing Inferences in a Holistic Analysis as Required by *Tellabs*..........................15

II.    In the Alternative, the Court Should Certify the Second Opinion for Immediate Appeal. ...............................................................................................22

CONCLUSION....................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agnico-Eagle Mines Ltd. Sec. Litig.,*
No. 11-cv-7968 (JPO) 2013 WL 144041 (S.D.N.Y. Jan. 14, 2013)........................................21

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.,*
No. 19-cv-10067 (PAE), 2020 WL 4734989 (S.D.N.Y. Aug. 14, 2020) ...............................10

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.,*
28 F.4th 343 (2d Cir. 2022) ...............................................................................17, 18, 19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................................6, 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007).......................................................................................16

*Avon Pension Fund v. GlaxoSmithKline PLC,*
343 F. App'x 671 (2d Cir. 2009) .........................................................................19, 20

*In re Barclays Bank PLC Sec. Litig.,*
No. 09-cv-1989 (PAC), 2017 WL 4082305 (S.D.N.Y. Sept. 13, 2017)...........................13, 15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..............................................................................................6, 7

*In re Cabletron Sys., Inc.,*
311 F.3d 11 (1st Cir. 2002)......................................................................................24

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.,*
957 F. Supp. 2d 304 (S.D.N.Y. 2013).........................................................................10

*City of Dearborn Heights Act 345 Police & Fire R v. Axonyx, Inc.,*
374 F. App'x 83 (2d Cir. 2010) .................................................................................11

*Condra v. PXRE Grp. Ltd.,*
357 F. App'x 393 (2d Cir. 2009) ...............................................................................25

*In re Dynex Cap., Inc. Sec. Litig.,*
No. 05-cv1897 (HB), 2006 WL 1517580 (S.D.N.Y. June 2, 2006) ....................................23

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.,*
553 F.3d 187 (2d Cir. 2009)...................................................................................6, 16

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011)...............................................................................................13

*In re Farfetch Ltd. Sec. Litig.*,
   No. 19-CV-08657 (AJN), 2021 WL 4461264 (S.D.N.Y. Sept. 29, 2021)...............................18

*Golesorkhi v. Green Mountain Coffee Roasters, Inc.*,
   569 F. App'x 43 (2d Cir. 2014) ............................................................................................6

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009)................................................................................................24

*Iwa Forest Indus. Pension Plan v. Textron Inc.*,
   14 F.4th 141 (2d Cir. 2021) ................................................................................................11

*Kalnit v. Eichler*,
   264 F.3d 139 (2d Cir. 2001)................................................................................................20

*In re Kingate Mgmt. Ltd. Litig.*,
   784 F.3d 128 (2d Cir. 2015).................................................................................................5

*Kravitz as Tr. of Aegean Litig. Tr. v. Tavlarios*,
   No. 20-2579-CV, 2021 WL 5365582 (2d Cir. Nov. 18, 2021)...............................................17

*Law. v. Cota*,
   764 F. App'x 65 (2d Cir. 2019) ............................................................................................5

*In re Longfin Corp. Sec. Class Action Litig.*,
   No. 18-cv-2933 (DLC), 2019 WL 3409684 (S.D.N.Y. July 29, 2019) ................................4, 5

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)....................9, 10

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
   616 F. App'x 442 (2d Cir. 2015) .........................................................................................17

*Medis Inv. Grp. V. Medis Techs. Ltd*,
   586 F. Supp. 2d 136 (S.D.N.Y. 2008), *aff'd*, 328 F. App'x 754 (2d Cir. 2009)....................21

*MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*,
   761 F.3d 1109 (10th Cir. 2014) ..........................................................................................24

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)........................................................................................3, 9, 11

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)........................................................................................... *passim*

*Owens v. Jastrow*,
    789 F.3d 529 (5th Cir. 2015) ...................................................................................24

*Podraza v. Whiting*,
    790 F.3d 828 (8th Cir. 2015) ...................................................................................24

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021) .................................................................................24

*Puddu v. 6D Glob. Techs., Inc.*,
    742 F. App'x 553 (2d Cir. 2018) ..............................................................................17

*In re PXRE Grp., Ltd., Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE Grp.
    Ltd.*, 357 F. App'x 393 (2d Cir. 2009) .....................................................................25

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009) .............................................................................7, 19, 24

*Schiro v. Cemex, S.A.B. de C. V.*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019) .....................................................................10

*Slayton v. Am. Exp. Co.*,
    604 F.3d 758 (2d Cir. 2010) ..............................................................................20, 21

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008) .....................................................................17

*Tantaros v. Fox News Network, LLC.*,
    465 F. Supp. 3d 385 (S.D.N.Y. 2020) .....................................................................23

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
    531 F.3d 190 (2d Cir. 2008) ....................................................................................24

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ....................................................................................... *passim*

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016) ....................................................................................13

*Tung v. Bristol-Myers Squibb Co.*,
    Case No. 1:18-cv-01611 (MKV) (S.D.N.Y.) ...........................................................18

*W. Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
    344 F. App'x 717 (2d Cir. 2009) .........................................................................7, 16

*Woolgar v. Kingstone Companies, Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020) .......................................................................9

*Zech Cap. LLC v. Ernst & Young Hua Ming,*
   636 F. App'x 582 (2d Cir. 2016) ........................................................................................16

**Statutes**

15 U.S.C. § 78u-4(b)............................................................................................................ 5-6

28 U.S.C. § 1292(b) ..........................................................................................................4, 22

**Rules**

Fed. R. Civ. P. 8 ........................................................................................................... *passim*

Fed. R. Civ. P. 9(b) .................................................................................................................2

Fed. R. Civ. P. 54(b) ...............................................................................................................4

Local Civil Rule 6.3 .................................................................................................................4

**INTRODUCTION**

On September 27, 2021, this Court issued a detailed Opinion and Order (Dkt # 92; the "First Opinion") granting the Defendants' motion to dismiss the first amended complaint in this action without prejudice because Plaintiffs had not adequately pled a strong inference of scienter as to any defendant or statement. In so holding, the Court carefully weighed the competing inferences to be drawn from the pleadings and surrounding context in a holistic analysis, as required under *Tellabs*, and concluded that "while Plaintiffs have perhaps presented a *plausible* motive, their pleadings fail to conjure the *strong* inference required under the [Private Securities Litigation Reform Act of 1995]." First Op. 16. In addition, the Court carefully scrutinized the confidential witness ("CW") allegations for evidence of recklessness with respect to each category of challenged statements, and determined that the CW allegations were too vague to establish that any Defendant "either knew or should have known that their statements were false." *Id.* at 18-26.

Plaintiffs filed a second amended complaint a few months later (Dkt. #95; the "SAC"), which contained the same confidential witness allegations as the first amended complaint but added two new theories of motive (solely with respect to Mr. Kennedy): (1) that certain stock sales Mr. Kennedy made under 10b5-1 plans and in connection with tax obligations during the class period were unusual in timing and amount suggesting motive; and (2) that Mr. Kennedy made false statements in order to effectuate the downstream merger with Privateer as a first step in a longterm scheme to position himself to become CEO of an even larger cannabis company if Tilray later merged with another company. Aside from the fact of the stock sales themselves, no new factual allegations were offered in support of either theory. Defendants moved to dismiss again, arguing that, for all the reasons noted in the First Opinion, the CW and other allegations were insufficient to show that any statement was false or misleading, and that the stock sales were not in fact suspicious in timing or amount and the "long-con" theory found no support in factual

allegations or common sense, therefore the new motive allegations could not meaningfully move the needle in the holistic scienter analysis.

On September 28, 2022, this Court issued an opinion granting in part and denying in part the Defendants' motion to dismiss the SAC (Dkt. #109; the "Second Opinion"). The Court found (a) that Plaintiffs "plausibly" alleged that statements the Defendants made about inventory and the value of the ABG Agreement were "false" (based on the same CW allegations rejected in the First Opinion), and (b) that the new motive allegations were sufficient to plead a strong inference of scienter because they "explain[ed] how Kennedy has both motive and opportunity to commit fraud." Second Op. 13-15, 17. These holdings cannot be squared with controlling Second Circuit and Supreme Court precedent, or with the logic and conclusions of the First Opinion. In particular, the Second Opinion suffers from at least four clear errors of law:

*First,* it applies the wrong pleading standard to Plaintiffs' claims. The Private Securities Litigation Reform Act of 1995 (the "Reform Act") replaced the Rule 8 standard with heightened pleading requirements for federal securities fraud claims in order to check frivolous litigation and prevent meritless cases from moving into discovery. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 309 (2007). The Second Opinion recites the heightened pleading standards set out in the Reform Act and Rule 9(b), but it fails to apply them. Instead, it applies Rule 8: it repeatedly takes as true conclusory assertions in the complaint, finds that challenged statements were "plausibly" alleged to be false on the basis of those assertions, and holds that certain stock sales and a handful of other unsupported scienter allegations "plausibly indicate" motive and opportunity sufficient to show a strong inference of scienter. Second Op. at 13-15, 18, 20-21. Both the language and the logic of this analysis are inconsistent with the Reform Act and bespeak clear error.

*Second,* the decision fails to subject the SAC's confidential witness allegations to the searching scrutiny required by established precedent. Where plaintiffs rely on CWs, their allegations must "provide an adequate basis for believing that the defendants' statements were false." *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000). It is not enough in this Circuit for a CW to simply assert his conclusory opinion that trim was "worthless" or that it was "immediately very clear" that the ABG Agreement was not worth what Tilray paid for it; a plaintiff must plead particularized *facts* supporting those CW assertions in order for them to be entitled to any weight in the Court's analysis. The Second Opinion fails to recognize or apply this Second Circuit law on CWs, and instead repeatedly "takes as true" vague and conclusory CW assertions without any factual support. This too was a clear error with important implications for the Court's decision.

*Third,* the Second Opinion fails to categorize the challenged statements as statements of fact or opinion and to analyze the opinion statements under the more rigorous standard set by *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015). For a statement of *opinion* to be false or misleading under *Omnicare*, Plaintiffs must allege with particularity either that the defendant did not genuinely believe the statement to be true at the time, or that particular omitted facts rendered the statement misleading when viewed in its full context. 575 U.S. at 188-89, 94. The Second Opinion does not even acknowledge this standard for opinion statements, much less apply it. All of the statements challenged in the SAC are statements of opinion, and any proper application of *Omnicare* compels the conclusion that Plaintiffs have not sufficiently pleaded that any of the challenged statements were false or misleading.

*Fourth,* the Court's holding that the SAC "alleged a strong inference of scienter by explaining how Kennedy had both motive and opportunity to commit fraud" (Second Op. 17) was clear error in two respects: the failure to follow binding Second Circuit law on "motive and

opportunity," and the failure to weigh all competing inferences in the holistic analysis required by *Tellabs*. 551 U.S. at 322-23. In so holding, the Court looked only at the dollar amounts of Mr. Kennedy's stock sales and not any of the surrounding context—what portion of his total holdings they represented, the context in which they were made, or the trading of other insiders—and on that basis concluded, contrary to Second Circuit law, that they constituted a concrete personal motive sufficient to plead scienter. It then also failed to weigh these allegations of motive against the many stronger competing inferences of non-culpable conduct identified by Defendants (and specifically recognized by the Court in the First Opinion). This is contrary to established precedent and constitutes clear error.

Finally, to the extent that the Second Opinion contends that Second Circuit law allows Plaintiffs to plead Section 10(b) liability solely based on (1) "plausible" allegations of falsity and/or (2) weak motive and opportunity allegations of the type alleged here, Defendants respectfully submit that these issues are appropriate for certification for interlocutory appeal as they involve controlling issues of law as to which there is substantial ground for difference of opinion and immediate appeal will advance termination of the litigation.

Accordingly, pursuant to Federal Rule of Civil Procedure 54(b) and Local Rule 6.3, Defendants respectfully ask the Court to reconsider the Second Opinion and correct the clear errors of law discussed below. In the alternative, the Court should certify the Second Opinion for immediate appeal pursuant to 28 U.S.C. § 1292(b), and stay discovery pending resolution of that appeal.

**ARGUMENT**

## I.    The Court Should Reconsider the Second Opinion to Correct Multiple Clear Errors.

A motion for reconsideration should be granted "when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a

4

clear error or prevent manifest injustice." *In re Longfin Corp. Sec. Class Action Litig.*, No. 18-cv-2933 (DLC), 2019 WL 3409684, at \*3-4 (S.D.N.Y. July 29, 2019) (granting motion to reconsider denial of motion to dismiss securities class action, and concluding, upon reconsideration, that the complaint did "not adequately plead [] scienter"); *see also Law. v. Cota*, 764 F. App'x 65, 66-67 (2d Cir. 2019) (affirming district court's reconsideration of its prior denial of a motion to dismiss where "[t]he district court [] overlooked controlling precedent, giving [the court] grounds to grant the motion for reconsideration"). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Longfin*, 2019 WL 3409684 at \*3.

Here, reconsideration of the Second Opinion is warranted in order to correct multiple clear errors and to thereby prevent manifest injustice, as detailed below.

### A.    Clear Error #1: The Court Applied Rule 8's Plausibility Standard Rather Than the Reform Act's and Rule 9(b)'s Heightened Pleading Standards.

The Reform Act set heightened pleading standards for securities fraud claims—above and beyond the usual Rule 8 plausibility standard—in order to check "frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims." *Tellabs*, 551 U.S. at 309. As the Second Circuit has explained:

> In the 1990s, Congress concluded that a profusion of abusive, non-meritorious class actions alleging securities frauds under the federal securities laws had become injurious to "the entire U.S. economy." In response, Congress passed the [the Reform Act] . . . . [which] was designed to curtail in numerous ways abuses in claims brought under the anti-falsity provisions of the 1933 and 1934 Acts. Its provisions included limitations on recoverable damages and attorneys' fees, sanctions for frivolous litigation, stays of discovery pending resolution of motions to dismiss, numerous restrictions affecting the conduct of class actions, and onerous pleading requirements.

*In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 138 (2d Cir. 2015). Specifically, the Reform Act requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made

5

on information and belief . . . state *with particularity* all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B) (emphasis added). It also requires that plaintiffs, "with respect to *each act or omission . . .* state *with particularity* facts giving rise to a strong inference" of scienter—that a particular defendant made a specific allegedly false or misleading statement intentionally or with deliberate recklessness. *Id.* § 78u-4(b)(2)(A) (emphasis added). And the Reform Act specifically directs that "the court *shall*, on the motion of any defendant, dismiss the complaint if [these heightened pleading standards] are not met." 15 U.S.C. § 78u-4(b)(3)(A) (emphasis added).

This is a significantly higher burden than Rule 8's pleading standard. Whereas Rule 8 only requires a complaint to "state a claim to relief that is plausible on its face" (*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)), the "Reform Act imposes a heightened standard for an allegation to be well pleaded" (*Golesorkhi v. Green Mountain Coffee Roasters, Inc.*, 569 F. App'x 43, 44 (2d Cir. 2014)). Thus a court deciding a motion to dismiss securities fraud claims must engage in a rigorous, statement-by-statement analysis to determine whether the plaintiff has adequately alleged *particularized facts* sufficient to show that each individual challenged statement was false or misleading at the time. And "[w]hile [courts] normally draw reasonable inferences in the non-movant's favor on a motion to dismiss, [the Reform Act] establishes a more stringent rule for inferences involving scienter because [the Reform Act] requires particular allegations giving rise to a strong inference of scienter." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). As the Second Circuit has explained:

> To meet the "strong inference" standard, it is not sufficient to set out "facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent," for that gauge "does not capture the stricter demand Congress sought to convey . . . . Rather, "*[t]o qualify as 'strong' ... an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent*." Thus, to

determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court … *must consider, not only inferences urged by the plaintiff ... but also competing inferences rationally drawn from the facts alleged.* An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct.

*S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 108–10 (2d Cir. 2009) (quoting *Tellabs*); *W. Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717, 719 (2d Cir. 2009) (affirming dismissal because "[a]lthough plaintiffs' allegations that [defendant] was reckless are arguably 'plausible' under the general pleading standards established by the Supreme Court in [*Twombly*] and [*Iqbal*], the [Reform Act] requires in this litigation context more than mere plausibility.").

The Second Opinion recites the Reform Act's heightened pleading standard but does not apply it. Instead, it employs both the language and the logic of Rule 8's pleading standard, holding (a) that "Plaintiffs have plausibly alleged that Defendants made false statements" regarding valuation of both inventory and the ABG Agreement (Second Op. 13-14), and (b) that Mr. Kennedy's stock sales and plaintiffs' unsupported long-con theory "plausibly indicate" motive and opportunity sufficient to plead scienter (*id.* 18, 20-21).[1] This is not merely a matter of semantics. Defendants appreciate that the word "plausible" has both technical (as in Rule 8 and *Iqbal* and *Twombly*) and colloquial (as in "reasonable" or "persuasive") meanings—and that courts can use it both ways—but here both the language and the substance of the Second Opinion's analysis reflect that it was applying a Rule 8 standard.

The "Applicable Law" section of the decision states that it "accepts as true all the allegations in the complaint and draws every inference in favor of the plaintiff," (*id.* at 11) and it proceeds to do exactly that, regardless of whether the allegations at issue were pled with

---

[1] Indeed, "plausible" and "plausibly" appear 14 different times in the Second Opinion, including in each of the falsity and scienter sections. Second Op. 11, 13, 14, 15, 16, 18, 20, 21.

7

particularity, and without weighing competing inferences as required under *Tellabs*. As discussed further below, none of the CW allegations are alleged with sufficient particularity to undercut the truth of any specific challenged statement or suggest any Defendants' culpable knowledge—a fact this Court itself repeatedly recognized in the First Opinion. *See infra* Section I.B. Yet the Second Opinion "takes as true" these conclusory *assertions*, unsupported by particularized factual allegations, and finds falsity "plausibly" alleged on that faulty basis. *See, e.g.*, Second Op. 13 (taking as true factually unsupported CW assertion that certain unspecified oils were "essentially worthless" and therefore inventory valuations were false at the time); *id.* (same re trim having "little to no value at the time it was being accumulated" and therefore inventory valuations were false and violated GAAP). The Court likewise takes the SAC's speculative assertions and hindsight assumptions as true without requiring any particularized factual support. *See, e.g., id.* at 16 (finding statement that "[ABG] liked our focus…and when the…. Farm Bill passed…things started coming together" to be "plausibly false" because it "could imply" discussions commenced prior to passage, even though no particularized facts suggest such an implication was false); *id.* at 13 (finding statements that Tilray was "building inventory" false and misleading solely based on later write-down). And it does the same with scienter, accepting even wildly speculative, unsupported theories from Plaintiffs without seriously weighing them against more compelling competing inferences. *See, e.g., id.* at 21 (accepting Plaintiffs' speculation that Mr. Kennedy must have been motivated to lie about inventory and the value of the ABG Agreement because "he was also pursuing a merger that would make him the head of the largest cannabis company in the world," even though no facts speak to Mr. Kennedy's actual knowledge or intent and the Aphria merger was not even a possible consideration until nine months after the ABG Agreement).

None of this is consistent with the Reform Act's heightened pleading standard; rather, it reflects application of Rule 8's plausibility standard throughout. Accordingly, the Court should reconsider the Second Opinion and correct this clear error.

**B.  Clear Error #2: The Second Opinion Fails to Scrutinize CW Allegations Under the Correct Second Circuit Standard.**

It was also clear error for the Second Opinion not to subject the CW allegations to searching scrutiny, and to instead take conclusory CW allegations as true and find that they showed falsity without particularized factual support.

"The Second Circuit has made clear that 'where plaintiffs rely on confidential personal sources,' those individuals must 'provide an adequate basis for believing that the defendants' statements were false.'" *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 579 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) (quoting *Novak*, 216 F.3d at 314). This starts, but does not end, with a baseline requirement that each CW allege a sufficient personal-knowledge basis for their allegations: "[w]here a plaintiff relies on allegations from confidential witnesses . . . those sources must be described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged. It is well-established, however, that generic and conclusory allegations based upon rumor or conjecture are undisputedly insufficient to satisfy the heightened pleading standard of [the Reform Act]." *Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193, 218-22 (S.D.N.Y. 2020) (quoting *Novak*, 216 F.3d at 314)) (finding CW allegations insufficiently particularized to show falsity of any statement); *see also* First Op. 18 ("Courts have generally been hostile to non-particular allegations from [CWs]' included in a complaint where such allegations are conclusory, vague, or otherwise 'insufficiently particularized.'").

9

The First Opinion correctly identified and applied this Second Circuit precedent, carefully scrutinizing the CW allegations with respect to each category of challenged statements and finding they were insufficient to show that any Defendant "knew or should have known" that any of the statements were false. First Op. 18. In particular, the First Opinion found:

> "FE 3's characterization of the company's due diligence merely reflects FE 3's *own* 'insufficiently particular' perception. *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, No. 19-cv-10067 (PAE), 2020 WL 4734989, at \*11 (S.D.N.Y. Aug. 14, 2020). Plaintiffs do not allege, through FE 3 or elsewhere, 'the kind of required specific factual allegations (by [CWs] or otherwise)' to suggest that Kennedy . . . subjectively felt the company's due diligence was lacking, much less that [he] believed the deal to be worse for the company than advertised. *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015). Absent such facts pertaining to Defendants' state of mind, the Court deems the FE 3 allegations too 'vague, speculative, and conclusory' to be probative of conscious misbehavior or recklessness. *Schiro v. Cemex, S.A.B. de C. V.*, 396 F. Supp. 3d 283, 305 (S.D.N.Y. 2019)." (First Op. 19)

> "[Plaintiffs] claim the company's failure to account for labor-intensive tasks and processes was willful or reckless because it was done over the objections of a former employee and 'on the directions of senior Tilray Management.' Am. Compl. ¶¶ 49-50. The Court notes at the outset that this vague confidential allegation is again 'insufficiently particular' to satisfy the [Reform Act's] heightened pleading standards. *Altimeo,* 2020 WL 4734989, at \* 11. But even assuming that this unsupported, generic assertion were true, it still fails to suggest anything more sinister than a disagreement among staff regarding accounting protocols." (First Op. 23)

> "Plaintiffs' claims regarding Tilray's alleged practice of overvaluing various 'unusable' (Am. Compl. ¶ 58) materials that no longer had resale or repurpose value similarly rely on two mid-level employees' vague and conclusory assertions. Aside from being insufficiently particularized, these confidential reports again simply depict discord among Tilray staff regarding the potential marketability of these materials. Moreover, 'none of these employees claims to have spoken with or otherwise notified ... any individual defendant' of their dissenting views. *Kinross,* 957 F. Supp. 2d at 304." (First Op. 24)

In short, the First Opinion concluded, after extensive analysis, that none of the CW allegations on which the SAC so heavily relies were sufficiently particular to show that any Defendant knew or should have known that any challenged statement—about the value of Tilray's trim and other

inventory, the valuation of the ABG Agreement, or anything else—was false or misleading.

By contrast, the Second Opinion does not even acknowledge *Novak*'s standard for evaluating CW allegations, much less correctly apply it. The CW allegations *did not change* as between the AC and the SAC,[2] yet the Second Opinion simply "takes as true" the same vague and conclusory allegations the First Opinion held to be insufficiently particular to be probative. *See supra* p. 10; *Compare* First Op. 19, 23, 24 *with* Second Op. 13-14. This is clear error. Second Circuit precedent requires courts to carefully scrutinize CW allegations to determine whether they allege particularized facts sufficient to show that each challenged statement was false or misleading when made. This showing requires more than unsupported opinions and conclusory assertions; the CWs must allege specific facts that line up both temporally and in terms of subject matter with each challenged statement such that they suggest it was false at the time. *See, e.g., City of Dearborn Heights Act 345 Police & Fire R v. Axonyx, Inc.*, 374 F. App'x 83, 85 (2d Cir. 2010) ("[A]ppellants rely on opinions of confidential witnesses to support their allegations, but they fail to offer any factual underpinnings for those opinions.").

Any proper evaluation of the CW allegations in the SAC compels the conclusion—as in the First Opinion—that they are insufficiently particular to be probative. This is critically important not only to scienter but also to falsity. As detailed in Section I.C *infra*, all of the challenged statements in the SAC are opinion statements, and under *Omnicare* a statement of opinion can only be false or misleading if the defendant did not genuinely believe the statement to be true at the time, or if particular omitted facts rendered the statement misleading when viewed

---

[2] The only (arguably) substantive change between the CW allegations in the AC and the SAC is that FE 1 purportedly "personally saw" "bags and bags, and boxes and boxes" of trim in Tilray's warehouses. SAC ¶ 61. This is irrelevant; the alleged misrepresentations concern the *value* of Tilray's trim, not whether certain quantities *existed* in Tilray's warehouses. This is in direct contrast to *Iwa Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141 (2d Cir. 2021), cited in the Second Opinion (p.14), where the alleged misrepresentations concerned the *amount* of inventory. Value, unlike quantity, is a subjective estimate subject to *Omnicare*'s more rigorous pleading standard for opinion statements.

in its full context. *Omnicare*, 575 U.S. at 188-89, 94. The First Opinion did not reach falsity because it found scienter insufficiently pleaded, but the same logic applies: if the CW allegations are insufficiently particular to show that Mr. Kennedy "knew or should have known" that any challenged statement was false, then they also cannot satisfy the first prong of *Omnicare*, and it is hard to imagine how they could show particular contemporaneous omitted facts sufficient to establish that any statement was misleading in context.

Correct application of Second Circuit law on CWs compels the conclusion that the CW allegations here are insufficiently particular to show falsity or scienter with respect to any statement. The Second Opinion's failure to scrutinize the CW allegations under the proper standard was clear error and warrants reconsideration.

### C.    Clear Error #3: The Second Opinion Fails to Articulate or Apply *Omnicare*'s Pleading Standard for Statements of Opinion.

The Second Opinion also fails to categorize the challenged statements as statements of fact or opinion, and to analyze challenged opinion statements under the more rigorous standard set by the Supreme Court in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015). This is a clear error of law with important consequences for the outcome.

All of the statements challenged in the SAC—optimistic assessments and valuations of the ABG Agreement, inventory valuations, and the cost of sales and gross margins metrics—are statements of opinion.[3] *See* Motion to Dismiss the SAC (Dkt. #100; "Second MTD"), at 12-19. The optimistic statements about the ABG Agreement and its prospects expressed the Defendants' subjective views on matters open to interpretation; likewise, the reported valuations of the ABG Agreement and Tilray's inventory were based on a variety of subjective estimates and judgment

---

[3] Notably, Defendants' point in this regard has never been that valuation statements are "too subjective to be actionable" (Second Op. 14), but that because valuations are based on subjective estimates, they constitute statements of opinion whose alleged falsity must be analyzed under *Omnicare*.

calls. *Id.* Accordingly, under *Omnicare* and well-established Second Circuit law, each of these challenged statements constitutes an *opinion* for purposes of the securities laws, and it was clear error not to analyze them as such.[4] *See Omnicare*, 575 U.S. at 183; *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110-13 (2d Cir. 2011) (estimates of goodwill are opinion statements because they "depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact"). This Court has previously recognized and applied this controlling law to valuations and write-downs like those at issue here: in *In re Barclays Bank PLC Sec. Litig.*, No. 09-cv-1989 (PAC), 2017 WL 4082305, at *8 (S.D.N.Y. Sept. 13, 2017) this Court applied *Omnicare* and Second Circuit precedent to hold "[v]aluations and write-downs are subjective statements of opinion [] and actionable only if they [meet *Omnicare*'s standard]."

For a statement of opinion to be false or misleading under *Omnicare*, a plaintiff must do more than allege that it turned out to be incorrect: he must plead (1) facts sufficient to show that the speaker did not actually hold the stated belief at the time the statement was made; or (2) "particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." 575 U.S. at 188-89, 194.

Nowhere in the Second Opinion does the Court articulate this standard or apply it. Instead, the Second Opinion take as true the vague and conclusory assertions of the CWs and, combined with the fact of the later ABG impairment and inventory write-downs, concludes that this "plausibly" alleges falsity.[5] This is clear error for multiple reasons (*see supra* Sections I.A & B), just one of which is that it fails to apply *Omnicare* and Second Circuit law. Any correct application

---

[4] *See also Tongue v. Sanofi*, 816 F.3d 199, 213 (2d Cir. 2016) (analyzing statements interpreting clinical data from a Phase 3 drug trial as opinions subject to *Omnicare*).

[5] *See, e.g.*, the bare statement, without any analysis, that the challenged statements were not "plausibly believed by Kennedy[] at the time they were made." Second Op. 15-16.

of *Omnicare* requires dismissal of all of Plaintiffs' claims, as shown by the Court's First Opinion. With respect to inventory valuation, the First Opinion correctly found that "Plaintiffs offer no non-conclusory allegations showing that, at the time of their statements, Kennedy . . . actually knew or had been presented with information indicating that Tilray's trim was worthless, or that it could not in fact be incorporated into Tilray's low-priced offerings—or indeed that trim constituted such a large share of Tilray's inventory." First Op. 25. It also found, after extensive analysis, that "[t]he mere fact that Tilray subsequently reduced its inventory valuation, without more, . . . cannot sustain the allegation that the company's failure to do so earlier was fraudulent," and "Plaintiffs' attempt to impute Kennedy's May 2020 state of mind onto Tilray's 2019 statements—including its purported GAAP . . . violations—is again impermissible fraud by hindsight." *Id.*

The factual allegations with respect to inventory valuation *did not change* between complaints, and these findings with respect to recklessness in the First Opinion are equally applicable to the first prong under *Omnicare.* Neither the allegations from CWs (none of whom interacted with Mr. Kennedy personally) nor the fact of the later inventory write-down is sufficient to show with particularity that Mr. Kennedy did not believe the inventory valuations at the time, or that any omitted contemporaneous fact rendered the valuations misleading in context.[6] *See* First Op. 24 ("Aside from being insufficiently particularized, these confidential reports again simply depict discord among Tilray staff regarding the potential marketability of these materials. Moreover, none of these employees claims to have spoken with or otherwise notified ... any individual defendant of their dissenting views."). They cannot establish the falsity of any inventory valuation under *Omnicare.*

---

[6] The single additional allegation in the SAC on this point—FE 1's statement that he "personally saw" "bags" and "boxes" of the materials—is at least as vague as the reports rejected in the First Opinion and in any case says nothing new about the *value* assigned to the products or how the "bags" he saw undercut any reported valuation.

14

As for valuation of the ABG Agreement, the Second Opinion appears to characterize these statements (without any analysis) as "objective figure[s]" and finds them "plausibly alleged" to be false based solely on the fact of the later impairment. Second Op. 14. This flies directly in the face of *Omnicare*, Second Circuit law, and this Court's *Barclays* decision described above.  The mere fact of the later impairment cannot establish that Mr. Kennedy did not believe the ABG valuations at any earlier time, or that any contemporaneous omitted fact rendered them misleading. Nor can any other factual allegations in the SAC, including those from CWs, make the requisite showing.[7] As this Court held in the First Opinion, "[t]he essence of Plaintiffs' claim is that, because Defendants' FDA hopes ultimately rang false, and the ABG Agreement therefore proved less valuable than initially advertised, Defendants either knew or should have known that their assessments over the first three quarters of its lifespan were inflated. This is the definition of fraud-by-hindsight: '[m]ere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud.'" First Op. 22.[8]

The Second Opinion's failure to analyze the challenged statements as opinions under *Omnicare* and Second Circuit precedent is clear error and requires reconsideration.

> **D.    Clear Error #4: The Second Opinion Fails to Apply Second Circuit Precedent on Motive and Opportunity, or to Weigh All Competing Inferences in a Holistic Analysis as Required by *Tellabs*.**

Finally, the Second Opinion's holding that the SAC "alleged a strong inference of scienter by explaining how Kennedy had both motive and opportunity to commit fraud" (Second Op. 17) reflects two related errors—the Opinion fails to follow binding Second Circuit law regarding

---

[7] FE 3's vague, conclusory, and factually unsupported assertion that it was "immediately very clear" that the ABG Agreement was not worth what Tilray had paid for it (SAC ¶ 76), cannot establish falsity.

[8] First Op. 21 ("Plaintiffs argue that Tilray's eventual decision to impair the ABG Agreement due to regulatory uncertainty exposed its prior optimism as fraudulent. But this is nothing more than an impermissible 'retrospective critique.'").

15

motive and opportunity, and it finds scienter based solely on (insufficient) motive and opportunity allegations without weighing all competing inferences under *Tellabs*.

In the Second Circuit, courts apply a scienter standard that incorporates both the circuit's pre-*Tellabs* two-prong test and *Tellabs*' holistic analysis:

> In pleading scienter . . . "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." The plaintiff may satisfy this requirement by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. Moreover, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." For an inference of scienter to be strong, "a reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged."

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (quoting *Tellabs*). In light of the "'inherently comparative' nature of the scienter inquiry," the Court is *not* "require[d] . . . to draw all inferences in plaintiff's favor." *Zech Cap. LLC v. Ernst & Young Hua Ming*, 636 F. App'x 582, 585 (2d Cir. 2016) (quoting *Tellabs*). Rather, the Court "must 'take into account plausible opposing inferences' and consider 'nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.'" *Id.* "This includes considering inferences that neither party raised." *W. Virginia Inv. Mgmt. Bd.*, 344 F. App'x at 719.

In order to show motive and opportunity, plaintiffs must allege that each defendant, "'benefitted in some concrete and personal way from the purported fraud.' Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *ECA*, 553 F.3d at 196. And while insider trading can suggest motive, sales must be "unusual" in all the circumstances in order to do so. "Factors considered in determining whether insider trading activity is unusual include the amount of profit from the sales,

16

the portion of stockholdings sold, the change in volume of insider sales, and the number of insiders selling." *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022). In practice, this law on motive and opportunity has set such a high pleading bar that plaintiffs typically can only meet it when their allegations suggest not only motive and opportunity but also that the defendants actually lied on purpose. *See, e.g.*, *Puddu v. 6D Glob. Techs., Inc.*, 742 F. App'x 553, 556 (2d Cir. 2018) (finding motive and opportunity where allegations "strongly impl[ied] that [defendants] intentionally concealed" information from the public, including that defendants instructed company executives to use code names when referring to the concealed information).

The Second Opinion's holding that Mr. Kennedy's alleged stock sales "plausibly indicate motive and opportunity to commit fraud" is inconsistent with this precedent and analytical framework. The Court found that Mr. Kennedy received a concrete, personal benefit by "personally making millions" on certain sales, and that the timing of one of those sales shortly after announcing the ABG Agreement was suspicious. Second Op. 18-19. But in so holding, the Court looked only at the dollar amounts of those sales and not, as Second Circuit law directs, at what portion of Mr. Kennedy's holdings the sales represented (small), whether any other insiders were alleged to have sold (they were not), or whether, in context, the sales truly seemed to suggest intent to defraud. *See* Second MTD Reply 7-8. In fact, 12 of the 14 sales at issue were made under 10b-5 plans, the other two were made in connection with tax withholding obligations,[9] and the

---

[9] The Court's refusal to consider Exhibits 11 and 12 also constitutes clear error. Second Op. at 2-3. It is axiomatic that courts may take judicial notice of SEC filings in deciding a motion to dismiss. *Kravitz v. Tavlarios*, 2021 WL 5365582, at *3 (2d Cir. Nov. 18, 2021). This is particularly true in securities class actions given the Court's obligation to weigh competing inferences of scienter. The Court's reliance on *In re Take-Two Interactive Sec. Litig.* to the contrary is misplaced. Second Op. at 2-3. There, the court refused to take judicial notice of documents that were *not* public. 551 F. Supp. 2d 247, 262 n.4 (S.D.N.Y. 2008). In any event, even without considering Exhibits 11 and 12, it was error for the Court to find scienter sufficiently pleaded because "stock sales are insufficient by themselves to demonstrate motive and opportunity to commit fraud." *In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442, 445 n.2 (2d Cir. 2015).

timing of the January 24 sale was not suspicious given several other events that happened around the same time (expiration of the lockup on his shares, and the vesting of RSUs that created a tax obligation). *See id.*; *Bristol-Myers Squibb Co.*, 28 F.4th at 355-56 & n.4 (rejecting attacks on 10b5-1 plan for failure "to allege facts indicating that the plan was not given or entered into in good faith," and finding "the vast majority of the sales were conducted pursuant to a 10b5-1 trading plan or were executed for procedural purposes, and therefore could not be timed suspiciously."). By comparison, in *Bristol-Myers*, the Second Circuit recently concluded that plaintiffs "fail[ed] to allege 'unusual' stock trades as necessary to raise an inference of bad faith or scienter" where one individual defendant sold over $62 million in stock during the class period (more than $44 million of which were *not* sold pursuant to a 10b5-1 plan), and where three other individual defendants sold over $13 million in stock *not* pursuant to a 10b5-1 plan. *See Bristol-Myers Squibb Co.*, 28 F.4th at 355-56; *Tung v. Bristol-Myers Squibb Co.*, Case No. 1:18-cv-01611 (MKV) (S.D.N.Y.) (Dkt. #67), at 106-108. The Second Circuit explained that even though "the trades detailed in the Complaint generated significant net profits," other factors (including the number of shares sold as a proportion of the defendant's overall holdings) weighed against scienter. *Id.*; *see also* Second MTD Reply at 9 n.18 (collecting cases rejecting stock sale motive allegations where stock sale values ranged from $44 million to $184 million).

Moreover, the roughly 640,000 shares Mr. Kennedy is alleged to have sold during the class period represent only 15.7% of his overall direct holdings at the beginning of the class period, and only 3.7% of his overall direct holdings at the end of the class period. Second MTD at 21; Second MTD Reply at 8-9. Such small total sales percentages do not support an inference of scienter,[10]

---

[10] *See, e.g., In re Farfetch Ltd. Sec. Litig.,* No. 19-cv-08657, 2021 WL 4461264, at *5 (S.D.N.Y. Sept. 29, 2021) (Nathan, J.) (rejecting stock sale motive allegation where defendant sold 50% of his shares; retention of the other 50% demonstrated that he "remained heavily invested" in the company); *see also* Second MTD Reply at 9 n.20 (collecting cases rejecting stock sale motive allegations where defendants sold between 44% and 65.6% of their holdings).

18

especially where, as here, they are dwarfed by the sales he made *after* revelation of the alleged fraud and the resulting stock price drop—4,600,000 shares of Class 2 Common Stock between June 16, 2020 and November 6, 2020. *See* Second MTD Reply at 8. It makes no sense that Mr. Kennedy would accumulate and then hold so many shares until after the class period, knowing the stock was artificially inflated and doomed to collapse.

In light of all this, the Court's holding that the stock sales were sufficient to show motive under the Second Circuit's high standard is clear error. *See, e.g.*, *Bristol-Myers Squibb Co.*, 28 F.4th at 355-56 (no scienter based on stock sales that "generated significant net profits" where portion of sales relative to holdings was not alleged to be significant, most sales were pursuant to 10b5-1 plans, and defendants acquired more shares than they sold during class period); *Avon Pension Fund v. GlaxoSmithKline PLC*, 343 F. App'x 671, 673 (2d Cir. 2009) (finding insider trading activity not "unusual" where 3 of 4 individual defendants increased their net holdings during the class period and fourth did not sell; "This … cannot support a 'cogent and compelling' inference of fraudulent intent; rather … [it] signals only confidence in the future of the company"). And the same is true of the Court's endorsement of Plaintiffs' speculative and unsupported theory that Mr. Kennedy was motivated to lie because "he was also pursuing a merger that would make him the head of the largest cannabis company in the world." Second Op. 21. No facts anywhere suggest this was true, and the fact that the Aphria merger was not even conceived as a possibility until October 2019 strongly suggests it was not motivating Mr. Kennedy to lie in the previous 9 months. But regardless, as a matter of law, this is a generic professional goal that cannot suffice to show motive under Second Circuit precedent. *See, e.g., S. Cherry St.*, 573 F.3d at 109 (it is not sufficient "to allege goals that are possessed by virtually all corporate insiders").

19

Not only is the Second Opinion's holding inconsistent with the Second Circuit's high bar

for showing "motive and opportunity," it also fails to weigh competing inferences in the holistic

analysis required by *Tellabs*. A court deciding a motion to dismiss must consider "whether *all* of

the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any

individual allegation, scrutinized in isolation, meets that standard." *Avon*, 343 F. App'x at 673. As

the Second Circuit has explained:

> We rest our conclusion not on the presence or absence of certain types of
> allegations, but on a practical judgment about whether, accepting the whole factual
> picture painted by the Complaint, it is at least as likely as not that defendants acted
> with scienter. Just as facts innocent in themselves may appear more suspicious in
> the company of other facts, so too can a fact that seems damning when presented
> alone sometimes be explained away by reference to other circumstances. . . . [T]he
> significance that can be ascribed to an allegation of motive, or lack thereof, depends
> on the entirety of the complaint.

*Slayton v. Am. Exp. Co.*, 604 F.3d 758, 775, 777 (2d Cir. 2010). Thus, even if Mr. Kennedy's stock

sales supported an inference of scienter in isolation (they do not), the Court was still required to

weigh it against the many stronger competing inferences of good faith, and determine whether that

motive truly makes sense and suggests a strong inference of scienter in the context of the entire

complaint. It plainly does not. Indeed, the Court itself recognized a number of compelling

competing inferences in the First Opinion, none of which are mentioned in the Second Opinion:

> Other, stronger, inferences are lurking within the [AC]. While the motion to dismiss
> stage is not the proper setting to resolve factual disputes . . . "in determining whether
> the pleaded facts give rise to a 'strong' inference of scienter, the court must take
> into account plausible opposing inferences." *Tellabs*, 551 U.S. at 323. In this case
> there are many. For example, the frequent FDA discussion peppered throughout the
> alleged misstatements supports a strong inference that Defendants grounded their
> projections in apparently errant, but genuine, optimism that regulatory
> developments were imminent, and retreated only after accepting that the FDA was
> not planning to act as Defendants had hoped and expected. Other less innocuous,
> but nonetheless unactionable inferences also flow naturally from the Amended
> Complaint, including that Defendants acted out of a general "desire for the
> corporation to appear profitable," *Kalnit*, 264 F.3d at 139, and that their various

20

misjudgments were "at best, a product of . . . negligence." *Medis Inv. Grp. V. Medis Techs. Ltd*, 586 F. Supp. 2d 136, 148 (S.D.N.Y. 2008)[.]

\*\*\*

Tilray certainly appears to have overestimated . . . the value of the ABG Agreement . . . . But being wrong . . . is not the same as being dishonest. . . . Plaintiffs take issue with Tilray's decision to attribute its eventual impairment of the ABG Agreement to regulatory uncertainty. . . . [But t]he [AC] is replete with statements from throughout 2019 indicating that Defendants were confident that imminent FDA action would meaningfully boost their outlook in the U.S. market. To be sure, the FDA did not take any such action between August 2019 and March 2020. But it does not follow that expectant stakeholders should likewise have stood still over the same period. In an environment of uncertainty, regulatory inertia is itself relevant data for companies relying on the prospect of change. It can be especially germane to bullish companies like Tilray for whom inaction may be a signal to temper their optimism. That Tilray's more sober 2020 view of the regulatory landscape incorporated "different assumptions" than its more optimistic 2019 predictions does not enhance the scienter inference relative to the other, stronger, unactionable inferences embedded within the [AC] that the Court has already addressed. *Slayton v. Am. Exp. Co.,* 604 F.3d 758, 777 (2d Cir. 2010).

\*\*\*

Plaintiffs concede that there is at least some market for trim. Further, their pleadings again suggest that Defendants based their optimism [about the value of Tilray's inventory] in the belief that FDA action would unlock significant value in the U.S. market. . . . [T]he mere fact that Tilray subsequently reduced its inventory valuation, without more, again cannot sustain the allegation that the company's failure to do so earlier was fraudulent. *See Agnico-Eagle Mines,* 2013 WL 144041, at \*13. Plaintiffs place significant weight on their assertion that Kennedy "admitted that Tilray waited until the end of the year to revalue inventory" in a May 11, 2020 statement in which he disclosed that Tilray would now be "attributing zero value to ... byproduct." [AC] ¶¶ 150-51. But nowhere in that statement … does Kennedy suggest that the company deliberately *waited* to adopt this approach. Kennedy simply articulates Tilray's rationale for *now* doing so; he does not address why it did not do so earlier. Thus, Plaintiffs' attempt to impute Kennedy's May 2020 state of mind onto Tilray's 2019 statements-including its purported GAAP and accounting policy violations-is again impermissible fraud by hindsight.

It is precisely this weighing of inferences under *Tellabs* that drove the Court's first dismissal and is missing from the Second Opinion. Neither of the motives found to be sufficiently alleged in the Second Opinion makes any sense in the context of the full complaint. As discussed above, Mr.

21

Kennedy's stock sales were not unusual or suspicious in context; the mere fact that the sales were worth "millions" cannot itself establish motive, and the fact that they represented a small portion of his holdings, no other insiders are alleged to have sold, and he sold more shares after the class period than before all cut against such a finding. As for Plaintiffs' wildly speculative theory that Mr. Kennedy lied to inflate Tilray's share price so that he could close the downstream merger so that he could someday maybe become CEO of an even larger cannabis company, there's not a shred of factual support for this and it makes no sense in context. The merger with Aphria was not even contemplated until late in the class period, but any such deal was always going to require due diligence—if the goal was to become CEO of a post-merger entity, why would Mr. Kennedy have lied about things he knew due diligence would uncover, potentially tanking the deal before he could achieve this supposed objective?

It is Plaintiffs' burden to plead particularized *facts* sufficient to suggest a strong inference of scienter that is cogent and at least as compelling as any opposing inferences. And it is incumbent on courts to scrutinize securities fraud complaints under the Second Circuit's and Supreme Court's exacting pleading standards. The Court's failure to do so in the Second Opinion was clear error and warrants reconsideration.[11]

## II.     In the Alternative, the Court Should Certify the Second Opinion for Immediate Appeal.

For the reasons previously discussed, Defendants respectfully submit that the Court should reconsider its Second Opinion and dismiss the SAC with prejudice. In the alternative, however, Defendants would respectfully ask that the Court certify the Second Opinion for immediate appeal pursuant to 28 U.S.C. § 1292(b), and stay discovery pending resolution of that appeal.

---

[11] Defendants note that the Court did not explicitly address Plaintiffs' Section 20A insider trading claim in the Second Opinion. Defendants respectfully ask that the Court clarify its ruling with respect to Count III of the SAC.

"A district court may certify an otherwise non-appealable order for interlocutory appeal when 'such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and . . . an immediate appeal . . . may materially advance the ultimate termination of the litigation." *In re Dynex Cap., Inc. Sec. Litig.*, No. 05-cv1897 (HB), 2006 WL 1517580, at *1-3 (S.D.N.Y. June 2, 2006). "[A] question of law is controlling if reversal of the district court's order would terminate the action . . . [or] could significantly affect the conduct of the action," or if "the certified issue has precedential value for a large number of cases." *Tantaros v. Fox News Network, LLC.*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020). "A substantial ground for difference of opinion exists where (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Id.* at 391 ("It is the duty of the district judge to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute."). Finally, "[c]ourts place 'particular weight' on [the third] factor"—whether immediate appeal will advance ultimate termination of the litigation—which is "'closely connected' to the first factor." *Id.* at 392. Here, both the falsity and scienter holdings in the Second Opinion involve issues that satisfy these conditions and are appropriate for immediate appeal.

First, to the extent the Court believes that "plausibility" is the correct standard for evaluating falsity or scienter on a motion to dismiss a securities class action, this is a controlling question of law as to which the overwhelming weight of authority holds the opposite, and which is likely to result in final termination of the litigation. As discussed above, both the Supreme Court and the Second Circuit have consistently held that Congress intentionally supplanted the usual Rule 8 pleading standard with a heightened pleading standard for securities fraud cases when it enacted the Reform Act. Indeed, the Second Opinion acknowledges these heightened pleading

23

standards, yet it goes on to hold that plaintiffs "plausibly" alleged the falsity of each type of statement (except to the extent falsity depends on labor costs), based entirely on conclusory CW allegations taken as true, and finds that scienter allegations "plausibly" show motive and opportunity and therefore a strong inference of scienter. *See* Second Op. 13-15, 18, 20-21. If the Court truly believes that its plausibility findings and analysis correctly apply the Reform Act's heightened pleading standard, then Defendants respectfully contend that the issue should be certified for appeal because it is a controlling and outcome-determinative issue as to which the strong weight of precedential authority has held the opposite. *See supra* Sections I.A-D.

The same is true with respect to the Second Opinion's scienter analysis. Defendants have explained at length above how the Court's failure to apply Second Circuit law on motive and opportunity, and to weigh all competing inferences in a holistic analysis, were clear error. But to the extent this Court believes that the SAC's weak motive and opportunity allegations are sufficient to show a strong inference of scienter under Second Circuit law, Defendants respectfully contend that the Second Circuit's two-part scienter test conflicts with *Tellabs* and the Second Circuit should decide this important issue. There is currently a circuit split as to whether plaintiffs can plead a strong inference of scienter with allegations of motive and opportunity alone: the First and Eighth Circuits have held that plaintiffs can,[12] while the Third, Fifth, Ninth, and Tenth Circuits have held that they cannot[13]—allegations of motive and opportunity alone cannot fulfill scienter, but may be considered in a holistic analysis. The Second Circuit has not explicitly decided this question, choosing instead to interpret its pre-*Tellabs* two-prong analysis as consistent with *Tellabs*, as least so long as the two-prong analysis also includes holistic analysis of competing

---

[12] *See In re Cabletron Sys., Inc.*, 311 F.3d 11 (1st Cir. 2002); *Podraza v. Whiting*, 790 F.3d 828 (8th Cir. 2015).

[13] *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009), *Owens v. Jastrow*, 789 F.3d 529 (5th Cir. 2015), *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097 (9th Cir. 2021); *MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, 761 F.3d 1109 (10th Cir. 2014).

inferences. *See, e.g., S. Cherry St., LLC*, 573 F.3d at 108–10 (noting that in passing the Reform Act Congress adopted a substantive standard modeled on the Second Circuit's "strong inference" test but "did not adopt our motive-and-opportunity gloss for the pleading of intent or our alternative standard of recklessness" therefore "litigations and courts need not 'and should not employ or rely on magic words such as 'motive and opportunity' with respect to intent" but must instead consider a variety of factors bearing on mental state); *Condra v. PXRE Grp. Ltd.*, 357 F. App'x 393, 394 (2d Cir. 2009) (reciting both standards as controlling scienter analysis); *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 196–97 (2d Cir. 2008) (same).[14] As a practical matter, this attempt to reconcile the two-prong and *Tellabs* tests has resulted in a "motive and opportunity" standard so high in this Circuit that it effectively approximates *Tellabs*—finding motive and opportunity allegations sufficient to plead scienter only where those allegations also strongly indicate the defendant lied on purpose in all the circumstances. *See supra* p. 17. But if the weak stock sale and long-con motive allegations here suffice to plead a strong inference of scienter under Second Circuit law—notwithstanding the many stronger competing inferences of good faith—then Defendants respectfully submit that the Second Circuit's test is incompatible with *Tellabs* and this creates a controlling issue of law appropriate for immediate appeal.

## CONCLUSION

Defendants respectfully submit that each of the clear errors identified above warrants reconsideration of the Second Opinion and dismissal of the SAC with prejudice. In the alternative, Defendants respectfully contend that the Second Opinion raises controlling issues of law and ask that the Court certify it for immediate appeal to the Second Circuit.

---

[14] *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 528-29 & n.21 (S.D.N.Y. 2009) ("the Second Circuit has not clarified the exact relationship between its own case law, pre-dating (but surviving the passage of) the [Reform Act] . . . and the Supreme Court's recent ruling in *Tellabs*" but has "indicated that the two analyses are interrelated").

Dated: October 12, 2022                                   Respectfully submitted,


                                                          BAKER & HOSTETLER LLP


                                                          By:  */s/ Douglas W. Greene*
                                                               Douglas W. Greene (*pro hac vice*)
                                                               dgreene@bakerlaw.com
                                                               Zachary R. Taylor
                                                               ztaylor@bakerlaw.com
                                                               45 Rockefeller Plaza
                                                               New York, NY 10111
                                                               Telephone: 212.589.4200

                                                               Genevieve G. York-Erwin
                                                               gyorkerwin@bakerlaw.com
                                                               999 Third Avenue, Suite 3900
                                                               Seattle, WA  98104
                                                               Telephone: 206.566.7079

                                                               *Attorneys for Defendants*