**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the putative Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| GANESH KASILINGAM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br>TILRAY, INC., BRENDAN KENNEDY, and MARK CASTANEDA,<br><br>Defendants. | **CASE No.: 1:20-cv-03459-PAC**<br><br>**DECLARATION OF JONATHAN HORNE IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br><br>**<u>CLASS ACTION</u>** |

**TABLE OF CONTENTS**

I.   INTRODUCTION.................................................................................................... 1

II.   FACTS AND PROCEDURAL HISTORY ........................................................... 3

   A.   The Court Dismisses the FAC ........................................................................ 3

   B.   The Court Denies in Part the Motion to Dismiss the Complaint ................... 4

III.   ARGUMENT........................................................................................................ 6

   A.   Defendants Are Not Entitled to Reconsideration Just Because They Disagree With
        How the Court Weighed the Relevant Factors ................................................ 6

   B.   The Court Properly Found That Plaintiffs Sufficiently Alleged Falsity ..................... 7

      i.   The Court properly found that Plaintiffs need only plausibly allege falsity
           (purported error 1) ..................................................................................... 7

      ii.   The Court properly found that Plaintiffs plausibly alleged falsity (purported
            errors 1 and 2) ........................................................................................ 8

      iii.   The First and Second Opinions Are Consistent ......................................... 10

         1.   The Court's conclusions about the ABG Agreement statements are consistent
              ................................................................................................ 10

         2.   The Court's conclusions about the inventory statements are consistent .......... 12

   C.   The Court Properly Applied *Omnicare* (Purported Error 3)..................................... 13

   D.   The Court Properly Found that the Complaint Sufficiently Alleges Scienter
        (Purported Error 4).......................................................................................... 17

IV.   THE COURT SHOULD NOT CERTIFY AN APPEAL ASKING THE SECOND
      CIRCUIT TO WEIGH IN ON QUESTIONS IT HAS ALREADY REPEATEDLY
      RESOLVED........................................................................................................ 23

V.   CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)...................................................................................... 15, 17

*Adams v. Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003)........................................................................................ 18

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
19 F.4th 145 (2d Cir. 2021)........................................................................................... 7, 8

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022)......................................................................................... 19, 24

*Avon Pension Fund v. GlaxoSmithKline PLC*,
343 F. App'x 671 (2d Cir. 2009)................................................................................... 19, 20

*Borochoff v. GlaxoSmithKline PLC*,
2008 WL 2073421 (S.D.N.Y. May 9, 2008)........................................................................ 20

*City of New York v. Grp. Health, Inc.*,
2009 WL 1181056 (S.D.N.Y. Apr. 30, 2009)........................................................................ 7

*Davidson v. Scully*,
172 F. Supp. 2d 458 (S.D.N.Y. 2001)................................................................................. 6

*Dobina v. Weatherford Int'l Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012)................................................................................ 24

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*,
794 F.3d 297 (2d Cir. 2015)..................................................................................... 8, 19, 24

*Fait v. Regions Fin. Corp.*,
655 F.3d 105 (2d Cir. 2011)........................................................................................ 11, 15

*Hedick v. The Kraft Heinz Co.*,
2021 WL 3566602 (N.D. Ill. Aug. 11, 2021)...................................................................... 17

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)....................................................... 13, 14, 15, 16

*In re Avon Sec. Litig.*,
2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) .................................................................... 14

ii

*In re Axonyx Sec. Litig.*,
  2009 WL 812244 (S.D.N.Y. Mar. 27, 2009) ................................................................. 9

*In re Barclays Bank PLC Sec. Litig.*,
  2017 WL 4082305 (S.D.N.Y. Sept. 13, 2017) ...................................................... 15, 16

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  43 F. Supp. 3d 369 (S.D.N.Y. 2014) .............................................................................. 6

*In re Farfetch Ltd. Sec. Litig.*,
  2021 WL 4461264 (S.D.N.Y. Sept. 29, 2021) ............................................................. 20

*In re ForceField Energy Inc. Sec. Litig.*,
  2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017) .............................................................. 16

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
  2014 WL 2815571 (S.D.N.Y. June 23, 2014) ................................................................ 6

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
  2014 WL 5002090 (S.D.N.Y. Oct. 7, 2014) ................................................................. 23

*In re Silvercorp Metals, Inc. Sec. Litig.*,
  26 F. Supp. 3d 266 (S.D.N.Y. 2014) ............................................................................ 11

*In re SLM Corp. Sec. Litig.*,
  740 F. Supp. 2d 542 (S.D.N.Y. 2010) .................................................................... 11, 21

*In re Vivendi Universal, S.A.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003) .......................................................................... 22

*IWA Forest Indus. Pension Plan v. Textron Inc.*,
  14 F.4th 141 (2d Cir. 2021) ..................................................................................... 10, 23

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
  2013 WL 6728869 (D. Vt. Dec. 20, 2013) ................................................................... 19

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) ....................................................................................................... 18

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*,
  2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004) ............................................................... 6

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) .......................................................................... 3, 5, 8, 23

*Nutriband, Inc. v. Kalmar*,
  2020 WL 4059657 (E.D.N.Y. July 20, 2020) ........................................................................ 21

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) ................................................................................................. 1, 13, 14

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
  432 F. Supp. 3d 131 (D. Conn. 2019) .................................................................................. 22

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) .............................................................................................. 18

*Plumbers & Pipefitters Nat'l Pension Fund v. Tableau Software, Inc.*,
  2019 WL 2360942 (S.D.N.Y. Mar. 4, 2019) ....................................................................... 21

*Power Auth. of State of New York v. Tug M/V ELLEN S. BOUCHARD*,
  433 F. Supp. 3d 477 (S.D.N.Y. 2019) .................................................................................. 6

*Puddu v. 6D Glob. Techs., Inc.*,
  742 F. App'x 553 (2d Cir. 2018) ......................................................................................... 21

*Puddu v. 6D Glob. Techs., Inc.*,
  2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021), on remand ....................................................... 21

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009) .................................................................................................. 22

*Sec. & Exch. Comm'n v. SBB Rsch. Grp., LLC*,
  2020 WL 6075873 (N.D. Ill. Oct. 15, 2020) ...................................................................... 14

*Set Cap. LLC v. Credit Suisse Grp. AG*,
  996 F.3d 64 (2d Cir. 2021) ....................................................................................... passim

*Setzer v. Omega Healthcare Invs., Inc.*,
  968 F.3d 204 (2d Cir. 2020) .............................................................................................. 24

*Shukla v. Deloitte Consulting LLP*,
  2021 WL 5999307 (S.D.N.Y. Dec. 20, 2021) ...................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .......................................................................................... 7, 17, 23

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016) .............................................................................................. 15

iv

*Underland v. Alter*,
  2011 WL 4017908 (E.D. Pa. Sept. 9, 2011)..............................................................14

*Villella v. Chem. & Mining Co. of Chile Inc.*,
  2017 WL 1169629 (S.D.N.Y. Mar. 28, 2017) ..........................................................17

**Statutes**

15 U.S.C. § 78u-4(b)..............................................................................................12

## I.    INTRODUCTION[1]

In denying in part Defendants' motion to dismiss the Complaint,  the Court properly stated and applied the correct legal standards. It analyzed the facts Plaintiffs alleged with particularity and determined they supported a plausible inference that Defendants' statements were false. It found that Defendants' opinion statements were false or misleading under the standard established in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015). It weighed competing culpable and non-culpable inferences to find that Plaintiffs had sufficiently alleged a strong inference of scienter. The Defendants assert the Court got it clearly wrong, but they mischaracterize the Second Order and existing caselaw. Stripped of these mischaracterizations, the Defendants' argument is that the Court erred in weighing the factors it considered, that is not a proper basis for reconsideration.

**The Court stated the correct legal standard**: The Court assumed all the alleged facts are true and granted all reasonable inferences in Plaintiffs' favor. Then, evaluating scienter, the Court determined that the culpable inference is as compelling as any nonculpable inference. Defendants find fault, but the Second Circuit does exactly the same. *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 78 (2d Cir. 2021) ("Accepting the facts alleged in the complaint as true, and drawing all reasonable inferences in [plaintiff's] favor, we conclude that the allegations of scienter are at least as compelling as the competing inferences urged by [defendant].").

---

[1] References to "FAC" and Complaint are to the First Amended and Second Amended Complaints, respectively, ECF Nos. 78, 95. "FAC ¶_" and "¶_" refer to paragraphs of the FAC and Complaint, respectively. References to "First Opinion" and "Second Opinion" are to the Orders resolving the motions to dismiss the FAC and Complaint, ECF Nos. 92, 109. References to MTD Opp. are to Plaintiffs' Opposition to Defendants' motion to dismiss the Complaint, ECF No. 103. References to Def.Br. are to Defendants Memorandum of Law in support of their Motion for Reconsideration, ECF no. 111. References to "Horne Dec." are to the Declaration of Jonathan Horne, filed herewith. **Unless otherwise noted, all emphases are added and all citations are omitted.**

**The Court applied the proper legal standard to falsity**: The Court properly credited all particular allegations, but did not credit conclusory allegations. The Court explained the factual basis for Plaintiffs' claims in the BACKGROUND section of the Second Opinion, and its conclusions in the DISCUSSION section.  Defendants' argument ignores the former. The Court did not err.

**The Court properly applied *Omnicare***: The Court properly found that certain of Defendants' statements were false statements of fact.  The Court properly found that certain of the remaining statements were misleading because they made false embedded statements of fact, while Plaintiffs' allegations supported a plausible inference that Defendants did not believe some of their statements. The Court did not cite *Omnicare* because it relied on cases from the Second Circuit and this District expounding it. The Court did not err.

**The Court correctly applied the legal standard to scienter**: The Court weighed culpable and nonculpable inferences, including the very inferences Defendants now assert it neglected. The Court reached a different conclusion than Defendants wished, but that does not mean it was wrong.

**The First Opinion and Second Opinion are consistent**: The First Opinion found that the FAC did not allege a strong inference of scienter without reaching falsity. The Defendants contrast the First Opinion with the Second Opinion's analysis of falsity. But falsity and scienter are different elements with different pleading standards. The inference of falsity need only be plausible, but the inference of scienter must be as plausible as any competing inference. Thus, the same allegations that fail to support a strong inference of scienter may support a sufficient inference of falsity. Further, the differences between the FAC and the Complaint's allegations are not limited to scienter allegations and the Complaint clarifies the FAC's legal theories.

2

The Court conducted the analysis Defendants assert it neglected. The Court should deny Defendants' Motion for Reconsideration.

## II.    FACTS AND PROCEDURAL HISTORY

### A.    The Court Dismisses the FAC

The FAC was Plaintiffs' first attempt to state a claim against Defendants. It alleged that Defendants Tilray, Kennedy, and now non-defendant Mark Castaneda had violated Section 10(b), and that the latter two had violated Section 20(a), of the Exchange Act. The Court dismissed the FAC, finding that  it failed to plead scienter, without reaching other elements. First Opinion, at 26.

The FAC, like the Complaint, alleged that the Defendants had overstated the value of a nine-figure agreement reached with ABG ("ABG Agreement"). *Id.*, at 6. The FAC relied on a former employee who reported that Tilray's due diligence on the ABG Agreement was minimal. *Id.* The Court ruled that the "confidential former employees cited in the Amended Complaint 'are described with sufficient particularity to support the probability that they possess the information alleged.'" *Id.*, at 19 (*quoting Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000) (cleaned up). But the Court construed the FAC as alleging that Kennedy's statements were false because he also believed due diligence was insufficient. The Court declined to draw a strong inference that Kennedy subjectively believed that opinion. First Opinion, at 19

The FAC also alleged that Defendants had overstated the value of Tilray's inventory by including worthless byproducts (trim) in the valuation. *Id.*, at 8. The Court held that the FAC did not permit an inference of scienter because, among other things, the trim might be used in Tilray's low-priced offerings and might be sold in the U.S. *Id.*, at 25.

The Court did not find that the FAC's allegations were implausible. The FAC alleged that Kennedy had a motive to make false statements so he could push through a merger that would leave him and Tilray's two other co-founders ("Controlling Shareholders") with personal control

3

over Tilray. The Court found that this "narrative", while "not implausible", was not as plausible as nonculpable inferences for failing to allege why "the nominal boons would have been to Kennedy's actual benefit after Tilray's share price foreseeably plummeted." *Id.*, at 13. The Court found that Plaintiffs did not sufficiently allege recklessness. But it found that "Plaintiffs' motive allegations are relevant to the precise timeline" and that it may "revisit" its ruling on recklessness if Plaintiffs made stronger motive allegations. *Id.* at 23.

**B.      The Court Denies in Part the Motion to Dismiss the Complaint**

The Second Amended Complaint made significant changes to the FAC. Most prominently, the Complaint added the strong motive inference the Court had found lacking in the FAC. The Complaint alleged that Kennedy made $28 million selling overvalued Tilray stock during the Class Period, including $11 million 18 days after he promised not to sell any Tilray shares. Second Opinion, at 8. The Complaint also explained why the "nominal boons" were so important to Kennedy. Before the Class Period, Kennedy had asserted that a major consolidation of the cannabis market was imminent. *Id.*, at 9. Kennedy's false statements allowed the Controlling Shareholders to obtain personal control over Tilray, which they used to pursue a merger with Aphria Inc. that disfavored investors but would have left Kennedy CEO of the world's largest cannabis company. *Id.*, at 9-10. But for COVID, which shut down America just as the merger was closing, Kennedy would have succeeded. *Id.*, at 10.  The Complaint also alleged that Kennedy used his control over Tilray to engage in lucrative related-party transactions. *Id.*, at 21 n.14.

The Complaint clarified why Defendants' statements about the ABG Agreements were false. Even if Kennedy personally believed the short timeline for negotiating and conducting due diligence was adequate, his statement would have misled reasonable investors who assumed Tilray took far more care with an agreement that cost a minimum of $100 million. *Id.*, at 15. Moreover,

4

the Complaint alleged a new actionable statement: Kennedy's false description of the timeline leading to the ABG Agreement. MTD Opp., at 10.

The Complaint also clarified the source and scope of the inventory statements. It clarified that these statements related to marijuana plant trim in Canada that at the time had no legal market. Second Opinion, at 6, 14. It alleged that under Generally Accepted Accounting Principles ("GAAP"), companies may not value inventory based on the mere hope that a market for that product will develop if and when something happens. *Id.*

The Court denied Defendants' motion to dismiss the Complaint. The Court examined the old and new allegations in a new context, with different legal theories and a different pleading standard, and found that the Complaint plausibly alleged that Defendants' statements were false.

The Court applied *Omnicare*. At  least two of Defendants' statements were of fact, not opinion. *Id.*, at 13-14, 15. Most of Defendants' opinion statements were misleading because they contained embedded false statements of fact. *Id.*, at 13-14. It drew a plausible inference that Kennedy did not subjectively believe some of the opinions he expressed. *Id.*, at 15-16.

The Court wrote that scienter is adequately alleged only if the culpable inference is at least as plausible as any nonculpable inference. *Id.*, at 17. It weighed the inferences Defendants and Plaintiffs suggested. *Id.*, at 18-21. Its discussion of Kennedy's stock sales spanned three pages and resolved all the arguments Defendants presented. *Id.*, at 18-20. The Court also considered the other scienter allegations: that Kennedy used the personal control over Tilray he secured through false statements to attempt to close a merger favorable to him but unfavorable to investors, and that his control let him engage in related-party transactions that benefited him at Tilray's expense. Second Opinion, at 20. Weighing all these inferences, the Court found that Plaintiffs sufficiently alleged scienter.

III.   ARGUMENT

A.   **Defendants Are Not Entitled to Reconsideration Just Because They Disagree With How the Court Weighed the Relevant Factors**

"A district court's discretion to reconsider a prior decision is 'limited' by the doctrine of the law of the case: 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2014 WL 2815571, at *4 (S.D.N.Y. June 23, 2014). Motions for reconsideration are only granted "upon a showing of exceptional circumstances." *Shukla v. Deloitte Consulting LLP*, 2021 WL 5999307, at *1 (S.D.N.Y. Dec. 20, 2021).  "[A] court must narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014), *aff'd sub nom. Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016).

Reconsideration is inappropriate without "[1] an intervening change of controlling law, [2] the availability of new evidence, or [3] the need to correct a clear error or prevent manifest injustice." *Power Auth. of State of New York v. Tug M/V ELLEN S. BOUCHARD*, 433 F. Supp. 3d 477, 478 (S.D.N.Y. 2019). Defendants only assert clear error.

"The purpose of a motion to reargue is [neither] to start a new round of arguments ... [n]or should the Court be expected to wade through lengthy papers that simply reiterate in slightly different form the arguments already made in the party's original papers." *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 2004 WL 1943099, at *2 (S.D.N.Y. Aug. 27, 2004). Thus, while courts occasionally grant motions that show they overlooked a relevant factor, they deny those asserting "that the Court improperly **weighed** and **construed** the facts." *Davidson v. Scully*, 172 F. Supp. 2d 458, 463 (S.D.N.Y. 2001) (even on *pro se* party's motion for

6

reconsideration); *City of New York v. Grp. Health, Inc.*, 2009 WL 1181056, at \*2 (S.D.N.Y. Apr. 30, 2009) ("[t]his is an argument that the Court did not properly weigh factors, not that such factors were overlooked, and provides no basis for reconsideration.").

*Group Health* is on point. There, the court granted a renewed motion to compel it had previously denied without prejudice. 2009 WL 1181056, at \*2. As here, the losing party sought reconsideration of the order granting the renewed motion, asserting that the second order was inconsistent with the first, and that the court must not have weighed one of the relevant factors because its analysis was not lengthy enough. *Id.* The court found that the expanded record justified a different decision and that the losing party's argument regarding the thoroughness of the opinion merely disagreed with the court's weighing of the factors. *Id.*

As shown below, the Second Opinion considered all the factors Defendants assert it neglected. Like the losing party in *Group Health*, Defendants at best assert that the Court's analysis could have been lengthier. And like *Group Health*, the differences between the FAC and the Complaint's allegations justify the different outcome. The Court should deny the motion for reconsideration because it properly considered all the facts and law in the first place.

**B.**     **The Court Properly Found That Plaintiffs Sufficiently Alleged Falsity**

   *i.*     *The Court properly found that Plaintiffs need only plausibly allege falsity (purported error 1)*

On a motion to dismiss, courts accept all well-pled facts as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). To plead falsity in a securities fraud case, plaintiffs must also meet Rule 9(b)'s requirement that fraud be pled with particularity, and a PSLRA requirement that allegations be stated with particularity. Yet even though these standards require particularity, they do not change the substantive standard: plaintiff need only "create a plausible inference" of falsity. *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 151 (2d Cir.

2021). Nor do those standards change the rule that courts draw all reasonable inferences in the plaintiffs' favor. *Id.* Thus, Defendants' assertion that Plaintiffs must raise more than a plausible inference is wrong.

   ii.  *The Court properly found that Plaintiffs plausibly alleged falsity (purported errors 1 and 2)*

Rule 9(b) requires that the plaintiff "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015). The Complaint plainly meets Rule 9(b); Defendants do not appear to argue otherwise.

A "complaint can meet the [PSLRA falsity pleading requirement] by providing documentary evidence and/or a sufficient general description of the personal sources of the plaintiffs' beliefs." *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000). The Court credits allegations drawn from former employees that are "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Id.* Further, because the Court determines whether the witnesses would know the facts attributed to them, they need not have contact with Defendants. *Blanford*, 794 F.3d at 301 (crediting facts from maintenance technician and machine operator).

Though Defendants charge the Court with ignoring the *Novak* standard, it found in the First Opinion "that the confidential former employees cited in the Amended Complaint 'are described with sufficient particularity to support the probability that they possess the information alleged.'" First Opinion, at 19 (*quoting Novak*, 216 F.3d at 314) (cleaned up). The Court did not change its mind between the First and Second Opinions because it had no reason to.

The facts these employees reported, read together with the Complaint's other allegation, supported the Court's conclusions that Plaintiffs plausibly alleged falsity. The Court stated most of the facts in the BACKGROUND section of the Second Opinion, 3-11.  The Court then set out its conclusions in the DISCUSSION section. *Id.*, at 12-17. Defendants' assertion that the Court improperly credited facts assumes away the BACKGROUND section which, on all three points Defendants complain of, explains the facts the Court relied upon to make rulings:[2]

- The Court concluded there were no discussions with ABG before the December 20, 2018 Farm Bill. Defendants call the Court's assertion conclusory. But from FE 3, the Court took as true that the ABG Agreement was negotiated in a matter of days. *Id.*, at 7. Because the ABG Agreement was negotiated in the few days before January 15, 2019, there were no discussions before December 20 of the past year. The Court's conclusion in the First Opinion that the FE 3 allegations met the *Novak* standard is correct because FE 3 oversaw Tilray's business development outside of Canada, including strategic initiatives. ¶76.

- FE 2 reported that in 2019, Tilray accumulated $750,000-$7,500,000 of customized precisely formulated oils to use in its products. ¶55. These oils had no use because Tilray "killed the brand" and abandoned essential oils. *Id.* Thus, "Tilray valued worthless, non-reusable oils between $750,000 and $7,500,000". Second Opinion, at 6. FE 2 managed procurement for all of Tilray's Canadian operations, so the allegations based on FE 2 met the *Novak* standard. ¶55.

---

[2] In *In re Axonyx Sec. Litig.*, 2009 WL 812244, at *4 (S.D.N.Y. Mar. 27, 2009), the plaintiffs did not assert that a defendants misstated a fact or misled investors as to a matter of fact by implication. Thus, a mere disagreement between a company and a consultant did not state a claim.  Here, the former employees report facts inconsistent with Defendants' statements.

9

- The Court found that the Complaint made detailed allegations about inventory, including that: (a) Tilray recorded trim as inventory when there was no ready market, violating GAAP, *id.* at 5-6, 14-15; (b) FE 1 saw "bags and bags, and boxes and boxes of end-of-run materials" that were not assigned a value in Tilray's internal accounting but were classified as inventory on Tilray's external financial statements, *id.* at 5; and (c) Kennedy admitted after the class period that Tilray was adopting new accounting policies "[s]o everything that we sell will have all the cost structure associated with it so that we don't have any write-offs at the end of the year." *Id.* Thus, Defendants' assertion that the Court "f[ound] statements that Tilray was 'building inventory' false and misleading solely based on [the] later write-down" mischaracterizes the Second Opinion.

The Court set out the facts, explained why they were particularized, and drew conclusions. It did not err.

### iii.    *The First and Second Opinions Are Consistent*

#### 1.    The Court's conclusions about the ABG Agreement statements are consistent

The First Opinion found that the FAC had not alleged a strong inference of scienter without ever reaching the question of whether the Defendants' statements were false. First Opinion, at 11-12. Defendants compare the FAC's scienter analysis with the Court's analysis finding that the Complaint sufficiently alleged falsity. But falsity and scienter are two different elements of Plaintiffs' claims with different pleading requirements. A plaintiff must show that the inference of scienter is as plausible as any nonculpable inference but need only allege facts that permit the plausible inference that a statement is false. *IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 147 (2d Cir. 2021). FE 3's assertion might well be "insufficiently particular" to establish

scienter while plausibly alleging falsity. The Second Circuit suggested as much in an opinion Defendants cite. *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 112 n.5 (2d Cir. 2011) ("We do not view a requirement that a plaintiff plausibly allege that defendant misstated his truly held belief and an allegation that defendant did so with fraudulent intent as one and the same."). *Fait* was later overruled, but not on this point.

Nor does the Court's finding that FE 3's assertions were not sufficient for scienter imply that it cannot find scienter on the Complaint's allegations. In many cases, like here, courts rely on motive allegations to find that the plaintiffs had sufficiently alleged scienter. For example, in *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 555 & n.5 (S.D.N.Y. 2010), the plaintiffs relied on 11 confidential witnesses employed at call centers to establish that GSE giant Sallie Mae's forbearance policies conflicted with Defendants' public statements. The plaintiffs used stock sales to show Defendants made their false statements with scienter. *Id.* at 558; *see also In re Silvercorp Metals, Inc. Sec. Litig.*, 26 F. Supp. 3d 266, 272, 275 (S.D.N.Y. 2014) (relying in part on confidential witness to infer falsity but inferring scienter from stock offering). Indeed, the Court based its findings that the FAC did not sufficiently allege scienter on the "absen[ce of a] motive, or some other reason to scrutinize the contours of the timeline" and noted that it may "revisit the point." First Opinion, at 23.

Second, the First and Second Opinions answered different questions. In the First Opinion, the Court focused on FE 3's opinion that Tilray's due diligence for the ABG Agreement was "derelict." First Opinion, at 19. It construed the FAC as alleging that Kennedy subjectively believed that Tilray's due diligence was lacking. *Id.* It declined to find a strong inference ***on this question*** from FE 3's opinion. *Id.* FE 3 also alleges that Defendants negotiated and completed due diligence on the ABG Agreement in a matter of days. Second Opinion, at 7-8, 15. That alone may

11

not suffice to raise a strong inference that Kennedy subjectively believed the due diligence was insufficient. Yet the Complaint alleges, as the FAC did not, that Kennedy stated the ABG Agreement took a month to more to negotiate. *Id.*, at 15. FE 3's statement directly contradicts Kennedy's. Assuming FE 3's statement is true, as the Court did on a motion to dismiss, Kennedy's statement is false.

The different legal theories also explain why the Court's conclusion changed on the other statements concerning the ABG Agreement. The FAC alleged that these statements were misleading because:

> [T]he ABG Agreement was hastily thrown together in a matter of days to prop up Tilray's stock price; (b) Defendants understood that the ABG Agreement would not be accretive but would instead have to be impaired (i.e. written down on Tilray's financial statements); and (c) the ABG Agreement did not leverage Tilray and ABG's strengths, but instead was a one-sided giveaway to ABG.

*E.g.* FAC ¶74.

The Complaint alleges the statements concerning the ABG Agreement were misleading because "reasonable investors would assume that Tilray had conducted significant negotiations and due diligence before signing a $100 million agreement, yet the ABG Agreement was proposed, negotiated, and closed in a matter of days[.]". *E.g.* ¶83. Thus, the Complaint better explains "the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1), and why Defendants "acted with the required state of mind" when they made the statements. *Id.* at (b)(2).

2.  The Court's conclusions about the inventory statements are consistent

The Court never reached falsity in dismissing the FAC's inventory statements either, so Defendants are again comparing scienter apples and falsity oranges.

The Complaint also clarifies Plaintiffs' theory. The Court found that the FAC's allegations were deficient because they did not sufficiently allege that (a) the inventory had no resale value, (b) the defendants were told the inventory had no value, or (c) the inventory would not be valuable

12

if the FDA changed its position on allowing CBD in foods and drinks. First Opinion, at 24-25. But the Complaint clarifies some of the FAC's allegations. The Complaint alleges that the substantial majority of the inventory overstatement was due to Tilray overstating marijuana plant trim generated by its operations in Canada. The FDA could not unlock any value for Tilray because legalization of marijuana plant trim in the U.S. was not even on the table. Rather, Tilray was recording this trim as inventory on the grounds that it would become valuable once Canada legalized the products in which the trim would be used in December 2019.  ¶¶65-68.  The Complaint cites GAAP and Tilray's own accounting policy to explain that Tilray could not record the trim as inventory because there was no ***current*** market. Second Opinion at 6, ¶69.  Wisely, as it turns out: no large market developed and the trim was worth very little.

Plaintiffs also cited Kennedy's post-Class Period admission concerning the reasons why Tilray had recorded trim as revenue but focused on a different part of the statement: "[s]o everything that we sell will have all the cost structure associated with it so that we don't have any write-offs at the end of the year." *Compare* First Opinion at 25 *with* Second Opinion at 6. Under GAAP, cost of sales must reflect "cost structure." ¶¶57, 64, 149. Kennedy's statement may not alone be sufficient to show he made the inventory statements with scienter, but it shows that Tilray's inventory accounting was false and misleading.

### C.    The Court Properly Applied *Omnicare* (Purported Error 3)

In *Omnicare*, the Supreme Court established a standard to determine whether statements of opinion are false and misleading, 575 U.S. at 178, which the Court properly applied. Step one is determining whether a statement is an opinion. The Court correctly determined that two key statements were of fact. Defendants stated that Tilray valued inventory "at the estimated selling price in the ordinary course of business." Tilray either did or did not use such price, so it is a statement of fact. *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at *13 (S.D.N.Y.

13

Sept. 9, 2019) ("[t]he company recognizes revenue [] at the time of the sale" is a statement of fact because the company "either recognized revenue at the time of sale or it did not."). The Court also correctly found that the statement was false because there was no market for marijuana plant trim. Second Opinion, at 14.  Kennedy's statement that "[ABG] liked our focus on research and science and, when the U.S. Farm Bill passed, things started coming together" is an objective, and false, description of the negotiations that led to the ABG Agreement. Second Opinion, at 15.

The Court also properly applied *Omnicare* to the opinion statements, step two. Under *Omnicare*, opinions are misleading if they contain false embedded statements of fact. 575 U.S. at 185. Tilray's valuation of inventory implied a false statement of fact because like Tilray's accounting policy, GAAP requires that companies value inventory at the estimated selling price in the ordinary course of business. A violation of an objective GAAP requirement, even when the end result also requires subjective judgments, is a false embedded statement of ***fact***. *Sec. & Exch. Comm'n v. SBB Rsch. Grp., LLC*, 2020 WL 6075873, at *3 (N.D. Ill. Oct. 15, 2020) ("[T]he alleged misstatements related to the overvaluation of structured notes in violation of GAAP are not allegations of misstatements of opinion, but are rather allegations of misstatements of fact."); *Underland v. Alter*, 2011 WL 4017908, at *9 (E.D. Pa. Sept. 9, 2011) (credit provision misleading because company failed to follow reported methodology); *In re Avon Sec. Litig.*, 2019 WL 6115349, at *17 (S.D.N.Y. Nov. 18, 2019) (credit provision misleading for omitting to disclose hiring less creditworthy multilevel marketing salespeople). *AmTrust* explains the distinction. There, the plaintiffs alleged that the company misstated the amount of deferred acquisition costs. 2019 WL 4257110, at *21. Deferred acquisition costs requires even more judgment than inventory valuation, but the defendants nonetheless made a false statement of fact because one of the reasons

14

the costs were overstated is that they violated an objective GAAP measure. *Id.* Thus, Defendants'

embedded statement of fact that they had followed GAAP's objective provisions was false.

This is so not in spite of but because of *Omnicare*. Although Defendants maintain

*Omnicare* imposes a new barrier, in the Second Circuit, "[b]y *increasing* the ability of plaintiffs

to plead material omissions with respect to statements of opinion as described

above, *Omnicare reduced* the significance of district courts' classification of statements as those

of fact or opinion." *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 176 (2d Cir. 2020). And,

in particular, *Omnicare* overruled *Fait*'s holding that plaintiffs must actually show the defendants

did not believe accounting estimates, 655 F.3d at 112, the exact point for which Defendants cite

*Fait*. After *Omnicare*, Plaintiffs can plead falsity through embedded statements of fact.

*Tongue v. Sanofi*, 816 F.3d 199, 211 (2d Cir. 2016) was a straightforward application of

*Omnicare*. The plaintiffs alleged that the defendants' optimistic predictions that the FDA would

approve their product was misleading because the FDA had *privately* expressed concern with the

company's use of single-blind trial. The detail did not need to be disclosed because the FDA had

also *publicly* and *consistently* expressed the opinion that single-blind trials were suboptimal.

Because the FDA's private feedback matched its public position, Defendants' optimism would not

have misled reasonable investors. And in *Barclays*, the plaintiffs did not contend that the

defendants had failed to follow the proper valuation process, they disagreed with the defendants'

conclusions. *In re Barclays Bank PLC Sec. Litig.*, 2017 WL 4082305, at *10 (S.D.N.Y. Sept. 13,

2017), *aff'd,* 756 F. App'x 41 (2d Cir. 2018), *as amended* (Nov. 20, 2018) (finding no evidence to

contradict the defendants' arguments that valuations "reflect[ed] honestly held judgments reached

*after employing reasonable methodologies*.")

The Court properly found that "Defendants' statements bolstering the [ABG] Agreement are plausibly false because they implied untrue facts." Second Opinion, at 15. These facts are not true because "there were only a few days of negotiations total that did not commence until nearly a month" after the Farm Bill. *Id.* A reasonable investor would be skeptical of a so-called "long-term [$100 million] partnership" that was negotiated in a matter of days. *Id.*, at 7, 15. That is the exact analysis *Omnicare* required.

The Court also properly found that the Complaint plausibly alleged that Defendants' valuation of the ABG Agreement was misleading both because Defendants subjectively disbelieved it and because they failed to disclose the circumstances of the acquisition. Second Opinion, at 15. Just as a desperate seller will not realize full value from a sale, a desperate buyer will not receive its money's worth from an acquisition. The circumstances under which Tilray reached the ABG Agreement, known to Kennedy, plausibly suggest that Kennedy did not believe the ABG Agreement was worth what Tilray paid for it. Nor is the finding inconsistent with the First Opinion. As Judge Kaplan explained, "[t]he equivalence between falsity of an opinion [i.e., that a defendant subjectively disbelieved the opinion] and scienter [] is not perfect." *AmTrust*, 2019 WL 4257110, at *17 n.183. That's because "to plead falsity of an opinion, a plaintiff must plead only that it is plausible that the defendant did not actually hold the opinion" but "the inference of *scienter* [must be] cogent and at least as compelling." *Id.* The Court's two rulings, one on scienter, the other on falsity, are consistent. And on *Omnicare*'s other prong, the circumstances of the ABG Agreement had to be disclosed to make its presentation of valuation on Tilray's financial statements not misleading. Further, whether grounds existed for impairment is a question of fact. *In re ForceField Energy Inc. Sec. Litig.*, 2017 WL 1319802, at *13 (S.D.N.Y. Mar. 29, 2017) ("Whether [] circumstances are sufficient to trigger a duty to reassess goodwill is a factual question

16

that should not be resolved on a motion to dismiss."); *accord Hedick v. The Kraft Heinz Co.*, 2021 WL 3566602, at *9 (N.D. Ill. Aug. 11, 2021). Yet Tilray failed to even examine the ABG Agreement for impairment even after its own branding analysts asked "what are we going to do?"

Finally, Defendants chide the Court for not citing *Omnicare* when discussing their false and misleading opinions. They ignore that the Court cited Second Circuit and Southern District of New York opinions interpreting *Omnicare*: *Abramson*, 965 F.3d at 174, and *Villella v. Chem. & Mining Co. of Chile Inc.*, 2017 WL 1169629, at *10 (S.D.N.Y. Mar. 28, 2017). Second Opinion, at 15. The Court did not need to cite *Omnicare* to apply it.

### D.    The Court Properly Found that the Complaint Sufficiently Alleges Scienter (Purported Error 4)

The Court "accept[ed] as true all the allegations in the complaint and dr[ew] every inference in favor of the plaintiff." Second Opinion, at 11. That is an accurate statement of the law. *Tellabs*, 551 U.S. at 324. The Court recognized that under controlling law, the inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Second Opinion, at 19 (*quoting Tellabs*, 551 U.S. at 324)). This is exactly how the Second Circuit states the standard. *Set Capital*, 996 F.3d at 78 ("Accepting the facts alleged in the complaint as true, and drawing all reasonable inferences in [plaintiff's] favor, we conclude that the allegations of scienter are at least as compelling as the competing inferences urged by [defendant]."). Finding "defendants' story [] not as plausible as Plaintiffs", the Court denied Defendants' motion to dismiss. Second Opinion, at 20-21. The Court properly stated the scienter standard.

And the Court properly applied *Tellabs*. It weighed the parties' competing culpable and nonculpable inferences. Second Opinion, at 17-21. It considered Kennedy's stock sales, *id.*, at 18-20, that he used control over Tilray to benefit himself, *id.*, at 9-10, 21 & n.14, and that he had a

motive to maintain control of Tilray to execute a transaction that placed his personal interest over other shareholders'. *Id.*, at 21. The Court may also have considered the facts suggesting conscious misbehavior or recklessness. For example, Kennedy's statements about the ABG Agreement were in part a description of how he personally had spent the previous month. The Court also considered inferences Defendants suggested from the Complaint's allegations and documents they had placed before the Court. *Id.*, at 20-21. The Court only concluded that Defendants' "story is not as plausible as Plaintiffs'" after weighing all these inferences. *Id.*

Defendants' argument is really that the Court's discussion of their arguments was not thorough enough for their liking. The Court had no obligation to specifically discuss and explain in exhaustive detail why it was rejecting a nonculpable inference. Indeed, in *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 (2011), the Supreme Court took the same approach as this Court: it stated the competing nonculpable inference and explained that it found the culpable inference more compelling in just a few paragraphs. Because no particular length is required, appellate courts accept a district court's assertion that it considered all the pleadings holistically even where, unlike here, the analysis is conclusory. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1092 (10th Cir. 2003), *as amended on denial of reh'g* (Aug. 29, 2003) (finding that the district court considered allegations holistically because "it said that it did"); *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015) (similar).

The Court also properly analyzed whether Kennedy's stock sales gave rise to an inference of scienter.  It reviewed their exquisite timing. Second Opinion, at 18. It found that the sales were enormously profitable. *Id.*, at 8. It considered Defendants' argument that certain of the sales were pursuant to three 10b5-1 plans but found the fact less probative because Kennedy had entered into the first plan weeks before the beginning of, and the other two during, the Class Period. *Id.*, at 19-

20. It could also have found probative that Kennedy had attempted to conceal this fact by referring to a single "plan" and failing to file the plans with his motion to dismiss. MTD Opp, at 19-20. The Court did not consider Defendants' assertion that one of the sales had been for tax reasons, because, the Court explained, it was based on a news article Defendants submitted for the truth of its contents.[3] Second Opinion, at 2.

Acknowledging that the Court analyzed the relevant factors, Defendants maintain that it nevertheless clearly erred in finding a motive because one factor the Court weighed purportedly negated all the rest: the percentage of stock sold. Defendants overstate the factor's importance; the Second Circuit did not even discuss the percentage sold in *Blanford*, 794 F.3d at 308-08. Defendants also misstate the facts. The vast majority of Kennedy's holdings were locked-up shares that he could not sell. He sold 34.0% of the shares available for sale at the beginning of the Class Period and 26.7% of the shares that were available to sell during the Class Period. MTD Opp., at 19. Such a percentage, considered holistically with other factors, establishes a motive.[4]

In any case, because the percentage sold is not the only factor courts consider, the opinions Defendants cite are inapposite. In both *Avon Pension Fund v. GlaxoSmithKline PLC*, 343 F. App'x 671, 673 (2d Cir. 2009) and *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th

---

[3] Though not necessary to the Court's decision, the Defendants' argument is circular because the article's source for the "fact" was a Tilray spokeswoman. ECF No. 102-14, at 2. Defendants assert that the Court's decision is a fifth clear error, albeit one only warranting a footnote. Defendants submitted a pile of undated, unsigned SEC filings but did not explain what they wanted the Court to take from them. Defendants' brief in support of their motion to dismiss, ECF No. 100, at 20 n. 27. Defendants call clear error the Court's decision not to take judicial notice of the documents for the truth of their contents, but they miss the point: without Kennedy's signature, they were just generic corporate documents. Second Opinion, at 2. Moreover, the Court need not sift through disorganized documents to draw its conclusions.

[4] In *Blanford*, the sales amounted to 18% and 38% of the defendants' shares and were not timed suspiciously. *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2013 WL 6728869, at *12 (D. Vt. Dec. 20, 2013).

343, 356 & n.4 (2d Cir. 2022), the only defendants who sold shares increased their holdings and, in the latter, the defendants asserted without contradiction that the plans 10b5-1 were "entered into in good faith". Kennedy did not increase his position, he personally received shares from the Share Exchange that he had previously owned indirectly, and his 10b5-1 plans were suspiciously timed. In *In re Farfetch Ltd. Sec. Litig.*, 2021 WL 4461264, at *5 (S.D.N.Y. Sept. 29, 2021), two defendants sold 4% and 20% of their shares. The remaining defendant sold 50%, but for innocuous reasons: he was resigning from the company. That he did not divest entirely upon his resignation, as might be expected, is why the court stated that he "remained heavily invested in Farfetch". *Id.* Defendants cite the appellate opinion in *GlaxoSmithKline PLC*, but as the district court opinion shows, the total proceeds were $6.5 million and "[t]he amended complaint does not contain any information on the amount of profits from the sales, the portion of defendants' stockholdings sold, or the change in volume of insider sale[.]" *Borochoff v. GlaxoSmithKline PLC*, 2008 WL 2073421, at *8 (S.D.N.Y. May 9, 2008).

Defendants also point to Kennedy's sale of 4,600,000 shares between June and November 2020. About 4.0 million of his shares were released from lockup between the close of the Class Period and November 2020.[5] Kennedy sold shares from June through November because he could not sell them before.

At bottom, according to Defendants, the Court erred not in its analysis but by finding a motive at all. Def.Br. at 17 ("[i]n practice, this law on motive and opportunity has set such a high pleading bar that plaintiffs typically can only meet it when their allegations suggest not only motive and opportunity but also that the defendants lied on purpose."). Yet courts infer motive from stock

---

[5] By November 9, 2020, 40.2% of the locked-up shares had been released. Horne Dec. Ex. 1 at 70. Kennedy personally received 10.0 million shares in the Share Exchange, ECF No. 104-1 at 4, so approximately 4.0 million of his shares had been released.

sales all the time. *Plumbers & Pipefitters Nat'l Pension Fund v. Tableau Software, Inc.*, 2019 WL 2360942, at *7 (S.D.N.Y. Mar. 4, 2019) (finding that the complaint did not allege conscious misbehavior against certain defendants but denying their motion to dismiss based on motive and opportunity from stock sales alone); *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 558 (S.D.N.Y. 2010) (finding motive and opportunity from stock sales without analyzing conscious misbehavior); *Nutriband, Inc. v. Kalmar*, 2020 WL 4059657, at *11 (E.D.N.Y. July 20, 2020) (finding inference of scienter based on stock sales); *In re Nevsun Res. Ltd.*, at *13 (S.D.N.Y. Sept. 27, 2013) (inferring scienter based on magnitude and timing of stock sales). Indeed, in the only case Defendants cite, there were no stock sales and the plaintiffs relied on recklessness, not motive and opportunity. *Puddu v. 6D Glob. Techs., Inc.*, 742 F. App'x 553, 556 (2d Cir. 2018).[6]

The Court also considered other allegations. The Court had found the FAC's allegation that Kennedy used his false statements to maintain control over Tilray "plausible", but not as compelling as nonculpable inferences because Plaintiffs did not show he had attempted to use his control. First Opinion, at 14. The Complaint alleged Kennedy used his control over Tilray to attempt to attempt push through a merger that would leave him the head of the world's largest cannabis company. Because Plaintiffs "articulat[ed] [a] theory for how these nominal boons would have been to Kennedy's actual benefit after Tilray's share price foreseeably plummeted", Plaintiffs completed their "motive narrative." First Opinion, at 13-14.

---

[6] In *Puddu*, the appearing defendants actionably concealed that an unsavory co-defendant who had serially committed pump-and-dump schemes (and who had not appeared) held a large stake in the company. The "45%", which Defendants likely read as the percentage of stock the defendants sold, is the co-defendant's holding that was required to be disclosed. *Puddu*, 742 F. App'x at 555. In *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1198566, at *7 (S.D.N.Y. Mar. 30, 2021), on remand, which the Court cited, Judge Nathan denied the co-defendant's motion to dismiss, finding motive because the plaintiffs plausibly alleged the defendant would have completed the pump-and-dump had he not been interrupted by his indictment for earlier securities fraud.

The Defendants disagree with the Court's weighing of these latter allegations because the initial Share Exchange negotiations preceded the Aphria merger negotiations. Before the Class Period Kennedy publicly predicted seismic shifts in the cannabis industry. Through the Share Exchange, he positioned himself to exploit these opportunities, and began  just as the Share Exchange was finally closing. Notably, Tilray created a special litigation committee to pursue claims against Kennedy and his co-conspirators in connection with the Share Exchange. Since the Complaint's filing, Kennedy, the other defendants, and certain non-parties settled the claims for $26.9 million. Horne Dec. Ex. 2.

Defendants cite *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) for the uncontroversial proposition that "goals [] possessed by virtually all corporate insiders" are insufficient. As the Court explained in the First Opinion, "[w]hether inflating stock prices to facilitate an acquisition establishes motive sufficient to satisfy the PSLRA's heightened pleading standards 'presents a close[ ] question,' with courts falling on either side depending on the facts alleged." First Opinion, at 13-14. Courts find the allegations sufficient if the plaintiff plausibly links the artificial inflation to one or more specific acquisitions alleged in the complaint. *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 169 (D. Conn. 2019); *In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 185 (S.D.N.Y. 2003) (acquisition of three companies identified in the complaint sufficiently alleged motive).

Finally, unaddressed in Defendants' reconsideration motion is that Kennedy valued his control over Tilray because he could misappropriate its funds in related-party transactions. For example, Kennedy had used the sale of an overvalued Smith & Sinclair, which he owned through Privateer, to pay himself millions of dollars. The Court found the subsequent write down of Smith & Sinclair's value "particularly probative because it is unlikely to be a coincidence that Kennedy

22

[re]valued the consideration at $420—a number synonymous with marijuana usage." Second Opinion, at 21 n.14.

In any case, as Plaintiffs showed in their opposition to Defendants' motion to dismiss and will not repeat here, the motive and recklessness allegations holistically support an inference of scienter. MTD. Opp. at 24-25.

**IV.   THE COURT SHOULD NOT CERTIFY AN APPEAL ASKING THE SECOND CIRCUIT TO WEIGH IN ON QUESTIONS IT HAS ALREADY REPEATEDLY RESOLVED**

"Certification of an interlocutory appeal is a rare exception to the rule that only final judgments are appealable." *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2014 WL 5002090, at *1 (S.D.N.Y. Oct. 7, 2014). Certification may only be granted if resolution of (a) a controlling question of law (b) as to which there are reasonable grounds for disagreement (c) would materially advance the case. *Id.*

Understanding that whether Plaintiffs sufficiently pled their claims is unsuitable for interlocutory appeal because it is not a question of law, *id.* at *1-2, Defendants manufacture two questions as to which there is no reasonable grounds for disagreement because the Second Circuit resolved them decades ago. It has been clear since at least 2000 that the PSLRA requires particularity but does not require that allegations be more plausible than under Rule 8. *Novak*, 216 F.3d at 312-14; *accord IWA*, 14 F.4th at 146 (while the facts must be stated with particularity, they only need to give rise to a plausible inference of falsity). It is undisputed since 2007 that the inference of scienter must be as cogent and compelling as any nonculpable inference. *Tellabs*, 551 U.S. at 324. So the Court need not ask the Second Circuit whether "'plausibility' is the correct standard for evaluating falsity or scienter on a motion to dismiss.'" Def.Br. at 24.

As to motive and opportunity, the Second Circuit has held over[7] and over[8] and over[9] again[10] that motive and opportunity allegations can suffice for scienter. *See also Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 243 (S.D.N.Y. 2012) ("A plaintiff who alleges motive and opportunity necessarily has satisfied the pleading requirements for *scienter,* even without any allegation that a statement that later proved to have been false was made with an indication of knowledge or recklessness."). It does not need an opportunity to give the same answer once again. Def.Br. at 25.

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for reconsideration, deny their motion for interlocutory appeal, and let this case proceed to discovery.

Dated: November 9, 2022                          Respectfully submitted,

                                 **THE ROSEN LAW FIRM, P.A.**

                                 /s/ Jonathan Horne
                                 Jonathan Horne (JH 7258)
                                 Laurence M. Rosen, Esq. (LR 5733)
                                 275 Madison Avenue, 40th Floor
                                 New York, New York 10016
                                 Telephone: (212) 686-1060
                                 Fax: (212) 202-3827
                                 Email: jhorne@rosenlegal.com
                                 Email: lrosen@rosenlegal.com

                                 *Lead Counsel for Lead Plaintiff and Class*

---

[7] *Bristol-Myers*, 28 F.4th at 355 ("a complaint must allege facts showing "(1) that defendants had the motive and opportunity to commit fraud, or[]"")

[8] *Set Capital*, 996 F.3d at 78 ("To establish scienter, a complaint may [] (2) allege facts to show that defendants had both motive and opportunity to commit fraud or.")

[9] *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) ("[P]laintiffs can satisfy [the scienter] requirement by 'alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud'").

[10] *Blanford*, 794 F.3d at 306 ("We have held that the scienter requirement is met where the complaint alleges facts showing either: 1) a motive and opportunity to commit the fraud".)

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/ Jonathan Horne

25