**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| GANESH KASILINGAM, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>- against-<br><br>TILRAY, INC., BRENDAN KENNEDY, and MARK CASTANEDA,<br><br>                    Defendants. | Case No. 20-cv-03459-PAC |

**REPLY BRIEF IN SUPPORT OF**
**THE DEFENDANTS' MOTION FOR RECONSIDERATION**
**AND/OR TO CERTIFY FOR INTERLOCUTORY APPEAL**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

I.    Each of Four Clear Errors Separately Requires Reconsideration and Dismissal. ...............1

    A.    Clear Error #1: Judging Securities Fraud Claims Under Rule 8..............................1

    B.    Clear Error #2: Failing to Judge CW Allegations By the Correct Standard............3

    C.    Clear Error #3: Failing to Apply *Omnicare*...........................................................4

    D.    Clear Error #4: Failing to Apply Second Circuit Precedent on Motive and Opportunity, or to Conduct the Holistic Analysis Required by *Tellabs*.................7

II.    Alternatively, the Court Should Certify the Second Opinion for Immediate Appeal..........9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co., Ltd.*,
   19 F.4th 145 (2d Cir. 2021) ...................................................................................................3

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
   No. 17-cv-1545, 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) ................................................6

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
   28 F.4th 343 (2d Cir. 2022) ................................................................................................7, 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................2, 3, 10

*In re Barclays Bank PLC Sec. Litig.*,
   No. 09-cv-1989 (PAC), 2017 WL 4082305 (S.D.N.Y. Sept. 13, 2017)...................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................................2, 3, 10

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009).................................................................................................2, 8

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011)....................................................................................................5

*In re Nevsun Res. Ltd.*,
   No. 12-cv-1845, 2013 WL 6017402 (S.D.N.Y. Sept. 27, 2013) .............................................7

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)....................................................................................................4

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015).......................................................................................................... *passim*

*Plumbers & Pipefitters Nat'l Pension Fund v. Tableau Software, Inc.*,
   No. 17-cv-5753, 2019 WL 2360942 (S.D.N.Y. Mar. 4, 2019).................................................7

*Slayton v. Am. Exp. Co.*,
   604 F.3d 758 (2d Cir. 2010)....................................................................................................8

*In re SLM Corp. Sec. Litig.*,
   740 F. Supp. 2d 542 (S.D.N.Y. 2010).....................................................................................7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)...................................................................................... *passim*

*W. Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
    344 F. App'x 717 (2d Cir. 2009). ......................................................................2

*Woolgar v. Kingstone Companies, Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020)...............................................................4

**Statutes**

15 U.S.C. § 78u-4(b).........................................................................................2

**Rules**

Fed. R. Civ. P. 8 ........................................................................... *passim*

Fed. R. Civ. P. 9(b) ......................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)...................................................................10

Respectfully, either the Court committed clear error in the Second Opinion,[1] or the Opinion's holdings so directly conflict with Second Circuit and Supreme Court precedent that it should be certified for interlocutory appeal. Plaintiffs seek to obscure this simple truth by digging deep into the details of the SAC to justify the Second Opinion's holdings. But this motion is not about relitigating the (in)sufficiency of the SAC's allegations; it is about fundamental errors in the standards by which the Second Opinion judged those allegations. The clear errors identified herein are just that—*clear* errors, evident on the face of the Second Opinion's language and reasoning:

The Second Opinion applied Rule 8's plausibility standard to Plaintiffs' claims, rather than the heightened pleading standards set by the Reform Act and Rule 9(b). This is clear error.

The Second Opinion did not apply *Omnicare*'s falsity standard when evaluating statements of opinion. This is also clear error—and an especially consequential one; application of *Omnicare* requires dismissal based on this Court's holdings in the First Opinion.

In addition, the Second Opinion failed to apply the Second Circuit's stringent requirements to the CW allegations, to follow Second Circuit precedent on motive and opportunity, or to conduct the holistic scienter analysis required by *Tellabs*. All clear errors of law.

Defendants do not simply "disagree with how the Court weighed the relevant factors" (Pls' Opposition (Dkt. #120; "Opp.") at 6)—they seek to correct clear errors of law and prevent manifest injustice, both core purposes of a motion for reconsideration. Def. Br. 4-5. And to the extent the Court believes the Second Opinion's pleading standard and scienter analysis were not erroneous, this raises controlling issues of law that should be certified for immediate appeal.

I.      **Each of Four Clear Errors Separately Requires Reconsideration and Dismissal.**

A.      **Clear Error #1: Judging Securities Fraud Claims Under Rule 8.**

---

[1] All defined terms take the same meaning as in Defs' Mem. of Law in Support of Mot. for Reconsideration and/or Certification (Dkt. #111; "Def. Br."). Unless otherwise indicated, all emphasis is added and internal citations omitted.

Plaintiffs cite no court decision applying Rule 8 to federal securities fraud claims—and Defendants have found none. Instead, courts uniformly recognize that Congress intentionally set a higher pleading bar for securities cases in the Reform Act, replacing Rule 8's pleading floor with heightened requirements that plaintiffs plead *particularized facts* demonstrating falsity and a strong inference of scienter.[2] "While [courts] normally draw reasonable inferences in the non-movant's favor on a motion to dismiss, [the Reform Act] establishes a more stringent rule . . . because [it] requires particular allegations giving rise to a strong inference of scienter." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). And while allegations may be "'plausible' under the general pleading standards established . . . in [*Twombly*] and [*Iqbal*], the [Reform Act] requires . . . more than mere plausibility."[3]

The Second Opinion stated the correct standards under the Reform Act and Rule 9(b) but failed to apply them. Instead, its language and analysis followed Rule 8: it "accept[ed] as true all the allegations in the complaint" (regardless of whether they were pled with particularity), "dr[ew] every inference in favor of the plaintiff" (without regard for the strong competing inferences the Court itself had identified in the First Opinion), and on that basis concluded that Plaintiffs had "plausibly alleged" false statements and that Mr. Kennedy's stock sales "plausibly indicate" motive and opportunity sufficient to plead scienter. Second Op. 11, 13-14, 18, 20-21. This is flatly inconsistent—both in approach and result—with the Reform Act and binding precedent interpreting it, and it constitutes a clear error of law.

Plaintiffs argue "plausibility" is in fact the correct standard for falsity on a motion to dismiss securities claims, relying on references to "plausibility" in the pleading-standard sections of certain Second Circuit opinions. Opp. 7-8, 10. But language to that effect (derived from *Iqbal*,

---

[2] *See* Def. Br. 5-6; 15 U.S.C. §§ 78u-4(b)(1)(B) & (b)(2)(A).
[3] *W. Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717, 721 (2d Cir. 2009).

*Twombly*,[4] and other non-securities-decisions interpreting Rule 8) cannot relieve securities plaintiffs of their burden to plead *particularized* facts sufficient to state their claims under the Reform Act and Rule 9(b). "Plausibility" does not mean, and legally cannot mean, the same thing in the securities fraud context as under Rule 8—in the securities fraud context, it must incorporate the particularity requirements of the Reform Act and Rule 9(b). And that is apparent in the decisions Plaintiffs cite: the Second Circuit recites *Twombly*'s "plausibility" standard but immediately follows it with recognition that the Reform Act and Rule 9(b) require more, and the decisions' subsequent analysis and holdings embody those heightened requirements.[5]

Not so in the Second Opinion. It articulated both the "plausibility" standard and the Reform Act's and Rule 9(b)'s heightened requirements but then completely ignored the latter, again and again finding Plaintiffs' claims "plausible" (and sufficiently pleaded) based on vague and conclusory CW allegations and generalized assertions in the complaint. *See infra* § I.B; Def. Br. 5-12. In short, unlike the First Opinion (and the decisions Plaintiffs cite), the Second Opinion did not just use Rule 8's language but also applied its standard—it incorrectly put a heavy thumb on the scales in favor of Plaintiffs at each point and failed to require particularity.[6] Def. Br. 7-8, 11-12, 19. This is clear error under the Reform Act, Rule 9(b), *Tellabs*, and Second Circuit precedent.

### B.       Clear Error #2: Failing to Judge CW Allegations By the Correct Standard.

The Second Opinion also erroneously "accepted as true" vague and conclusory CW allegations and on that basis found falsity "plausibly" alleged. Def. Br. 9-11. Longstanding Second Circuit precedent requires courts to carefully scrutinize CW allegations to determine (a) whether

---

[4] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[5] *See, e.g., Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co., Ltd.*, 19 F.4th 145, 146 (2d Cir. 2021) ("Usually . . . a complaint need only plead 'enough facts to state a claim to relief that is plausible on its face.' However, '[f]or complaints alleging securities fraud, we apply heightened pleading requirements . . . .").

[6] Indeed, Plaintiffs acknowledge that the Second Opinion employed a different standard than the First. *See* Opp. 5 ("The [Second Opinion] examined the old and new allegations in a new context, with different legal theories and *a different pleading standard*, and found that the Complaint plausibly alleged that Defendants' statements were false.").

the CW is sufficiently alleged to have been in a position to know the information he or she alleges, and, (b) if so, whether the CW's allegations are sufficiently particular to be probative.[7] The First Opinion conducted precisely this analysis, finding the CW allegations met the first requirement but failed the second.[8] By contrast, the Second Opinion did not acknowledge or apply either of these requirements; it simply accepted the same CW allegations as true without any analysis—as if under Rule 8—and found that they "plausibly" alleged that the challenged statements concerning the ABG Agreement and inventory valuation were false. *Id.* at 9-12.

This is clear error, and it impacts the entire Second Opinion. As a result of this error, the Second Opinion made a number of unsupported and outcome-determinative findings based on insufficiently particularized CW allegations, including that (i) there was "no market" for cannabis trim in 2019 (and therefore Tilray's inventory valuation violated GAAP), and (ii) the ABG Agreement was "hastily put together" and therefore not worth its reported value. Second Op. 5, 15. Each of these central conclusions draws its only support from vague and conclusory CW allegations that the First Opinion found insufficiently particular. *See* First Op. 19, 24; Def. Br. 9-12. The CW allegations *did not change* as between the FAC and SAC,[9] and the law of the case established in the First Opinion dictates that they have no probative value. *See* Opp. 6. So do Second Circuit law and common sense, and it was clear error for the Second Opinion to base its findings of falsity on insufficiently particularized CW allegations.

## C.    Clear Error #3: Failing to Apply *Omnicare*.

The Second Opinion also committed clear error by failing to acknowledge or apply

---

[7] *See* Def. Br. 9-11; *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000); *Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193, 218-22 (S.D.N.Y. 2020).

[8] *See* Def. Br. 9-11; *E.g.*, First Op. 24 ("Plaintiffs' claims regarding Tilray's alleged . . . overvaluing [of] 'unusable' materials . . . rely on two mid-level employees' vague and conclusory assertions. Aside from being insufficiently particularized, these [CWs] simply depict discord among Tilray staff regarding . . . potential marketability . . . .").

[9] Except for the vague and irrelevant new allegation that FE1 saw "bags and bags, and boxes and boxes" of trim in a warehouse at some unspecified time. SAC ¶ 61.

4

*Omnicare*'s standard for categorizing and evaluating statements of opinion.[10] It did not, as Plaintiffs suggest, merely cite different precedential authority while conducting the proper analysis. The Second Opinion ignored *Omnicare* entirely: it did not even acknowledge that statements of fact and opinion are evaluated differently or consider which challenged statements were which, and it analyzed all of them as if they were statements of fact. *See, e.g.*, Second Op. 14 (analyzing valuation of ABG Agreement as fact statement because it was an "objective figure").

This is a particularly consequential error; the core of this case concerns opinion statements—Tilray's valuations of inventory and the ABG Agreement. *See, e.g., Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110-13 (2d Cir. 2011) (estimates of goodwill are opinions because they "depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact"); *In re Barclays Bank PLC Sec. Litig.*, No. 09-cv-1989 (PAC), 2017 WL 4082305, at *8 (S.D.N.Y. Sept. 13, 2017) ("[v]aluations . . . are subjective statements of opinion [] and actionable only if they [satisfy *Omnicare*].").[11] Nearly all of the challenged statements are, in fact, opinion statements.[12] Under *Omnicare*, Plaintiffs must show either that Kennedy did not actually believe each opinion statement at the time, or that particular omitted facts rendered it misleading in context. 575 U.S. at 194.

Applying *Omnicare* to the allegations here dictates dismissal as a matter of law. As the First Opinion found with respect to inventory valuation, "Plaintiffs offer no non-conclusory

---

[10] *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188-89, 194 (2015).

[11] As here, plaintiffs in *Barclays* argued that certain valuations were false and that they violated the International Financial Reporting Standards defendants claimed to follow. *In re Barclays Bank PLC Sec. Litig.*, 09-cv-01989 (PAC), *Second Consolidated Amended Complaint* (Dkt. #66), at 51-57. The Court dismissed, holding that no particularized facts suggested the valuations were false or misleading under *Omnicare*. *In re Barclays*, 2017 WL 4082305, at *10.

[12] Second MTD 12-19. As for Tilray's statement that it valued inventory at the lesser of cost or "estimated selling price in the ordinary course of business," no *particularized facts* suggest otherwise. FE1 only claims he was told *in December 2019* that a lot of trim had accumulated (doesn't say when) and that he "learned" it had no market (no basis or details). FE2's allegation that he believes certain oils were overvalued in late 2019 (SAC ¶ 55) is equally conclusory, and irrelevant—it has nothing to do with alleged overvaluation of cannabis trim, the only basis on which Plaintiffs allege reported inventory was false. *E.g.* ¶¶99,111. These vague allegations cannot show there was no market for trim.

5

allegations showing that, at the time of their statements, [] Kennedy . . . actually knew or had been presented with information indicating that Tilray's trim was worthless, or that it could not in fact be incorporated into Tilray's low-priced offerings." First Op. 25. The First Opinion reached a similar conclusion regarding valuation of the ABG Agreement: "[t]he essence of Plaintiffs' claim is that, because Defendants' FDA hopes ultimately rang false, and the ABG Agreement therefore proved less valuable than initially advertised, Defendants either knew or should have known that their assessments over the first three quarters of its lifespan were inflated. This is the definition of fraud-by-hindsight." *Id.* at 22. These holdings preclude a finding that the challenged opinion statements were subjectively false (*i.e.* not believed) under *Omnicare's* first prong. And the First Opinion's findings regarding the CW allegations establish that they are insufficiently particular to show that any omitted fact rendered the opinions misleading in context.[13]

Plaintiffs claim these findings in the scienter context are irrelevant because CW allegations "might well be 'insufficiently particular' to establish scienter while plausibly alleging falsity." Opp. 10-11. This again mischaracterizes the standard—pleading falsity, like scienter, requires *particularized* facts. *Supra* § I.A. Moreover, "as courts in this district have noted, establishing [falsity] with respect to a statement of opinion essentially establishes the *scienter* element of a fraud claim, and *vice versa.*"[14] The subjective falsity prong of *Omnicare* and scienter are not identical, but they ask essentially the same question—whether particularized facts show the speaker knew the statement was false. Here, the First Opinion carefully scrutinized the pleadings and found them insufficient to suggest that Kennedy did not believe any of the opinions he expressed, and the SAC does not plead any new, particularized facts suggesting otherwise or

---

[13] *Supra* § I.B. Plaintiffs have not pled particularized facts showing there was no market for trim, so the related purported GAAP violation cannot be an "implied" embedded fact or omitted fact that rendered valuations misleading. Opp. 14 (citing inapposite cases re affirmations of compliance, *not* compliance as an embedded fact in a valuation).

[14] *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-cv-1545, 2019 WL 4257110, at *17 (S.D.N.Y. Sept. 9, 2019).

establishing that any opinion statement was misleading in context. Accordingly, *Omnicare* requires dismissal, and it was error not to apply it.

### D. Clear Error #4: Failing to Apply Second Circuit Precedent on Motive and Opportunity, or to Conduct the Holistic Analysis Required by *Tellabs*.

Finally, the Second Opinion's finding that Kennedy's alleged stock sales "plausibly indicate motive and opportunity to commit fraud" (Second Op. 18) and thereby establish a strong inference of scienter, ignored binding Second Circuit law on motive and opportunity and failed to weigh all competing inferences under *Tellabs*.[15]

Plaintiffs argue that "courts infer motive from stock sales all the time," but the decisions they cite uniformly involved sales of larger portions of holdings and/or additional particularized facts showing fraudulent intent.[16] The Second Circuit has repeatedly held that the value of stock sold is only one factor in deciding whether stock sales are sufficiently "unusual or suspicious" to show motive. Def. Br. 16.[17] And even when a court finds stock sales unusual or suspicious, it must still conduct a holistic analysis under *Tellabs*, weighing inferences both for and against plaintiffs.

The Second Opinion erred in both respects. Instead of considering the Second Circuit's required full set of relevant factors regarding stock sales, it looked only at the dollar amount, concluding that because Kennedy "personally ma[de] millions" and *one* of those sales was shortly after the ABG Agreement was announced (and the IPO lockup expired) motive and opportunity were "plausibly" alleged. Second Op. 18-19. This is clear error. Once again, "plausibility" is not the correct standard: the Reform Act and Supreme Court require that "an inference of scienter must

---

[15] *See* Def. Br. 15-22; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

[16] Opp. 20-21; *see, e.g., Plumbers & Pipefitters Nat'l Pension Fund v. Tableau Software, Inc.*, No. 17-cv-5753, 2019 WL 2360942, at *7 (S.D.N.Y. Mar. 4, 2019) (defendants present at meetings where underlying problems discussed); *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 558 (S.D.N.Y. 2010) (defendant "dumped nearly all of his shares during the Class Period"); *In re Nevsun Res. Ltd.*, No. 12-cv-1845, 2013 WL 6017402, at *13 (S.D.N.Y. Sept. 27, 2013) (defendant sold "his entire [company] stock holdings," and there were other indicia of fraudulent intent).

[17] *See Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022) (factors include "amount of profit," "portion of stockholdings sold," "change in volume of insider sales," "number of insiders selling").

7

be *more than merely plausible or reasonable*—it must be cogent and at least as compelling as any opposing inference." *Tellabs*, 551 U.S. at 314. Moreover, consideration of the full set of Second Circuit stock-sale factors dictates a different result. Kennedy's alleged $28 million in sales were far smaller than the Second Circuit standard.[18] They also represented a small portion of his direct holdings (15.7% at the beginning of the class period; 3.7% at the end),[19] most were made under 10b5-1 plans,[20] and no other insiders are alleged to have sold. Nor does Second Circuit law permit a finding of motive based on Plaintiffs' pure speculation that Kennedy lied about the value of the ABG deal and inventory to achieve the Share Exchange so he could somehow use *the Controlling Shareholders'* (not his own) control of Tilray to find, negotiate, and push through a merger to advance his career generally.[21] The SAC offers no particularized factual support for this, but the Second Opinion credited it as showing motive—blazing a legal trail in this Circuit.[22]

Having failed to apply the Second Circuit's high bar for motive and opportunity, the Second Opinion compounded that error by neglecting to weigh all competing inferences as required by *Tellabs*. "[T]he significance that can be ascribed to an allegation of motive . . . depends on the entirety of the complaint." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 776 (2d Cir. 2010). Here, the First Opinion identified numerous compelling non-culpable inferences that are equally

---

[18] Def. Br. 18 (discussing recent holding in *Bristol-Myers*, 28 F.4th at 355-56, that sale of $62 million was not unusual or suspicious); Second MTD Reply 9 n.18 (citing cases rejecting motive where sales were $44 million to $184 million).
[19] *See* Second MTD at 21. Even Plaintiffs' higher estimated percentages—34% of shares available at the beginning and 26.7% at the end (Opp. 19)—are far below percentages routinely held not to be unusual or suspicious. *See* Second MTD Reply at 9 n.20 (collecting cases rejecting motive based on sales of 44% to 65.6% of holdings).
[20] The Second Opinion essentially ignored the 10b5-1 plans because some were entered into during the class period, but *Bristol-Myers* held that plans entered during the class period still undercut scienter unless plaintiffs plead particularized facts showing the plans were not entered in good faith. 28 F.4th at 356 n.4. Plaintiffs did not do so here.
[21] A mere *general* desire to achieve *some* potentially lucrative acquisition cannot show scienter. *ECA*, 553 F.3d at 201.
[22] The Second Opinion also found "particularly probative" the allegation that "Kennedy [re-]valued the consideration" for the Smith & Sinclair acquisition "at $420—a number synonymous with marijuana usage" (p.21 n.14), but no facts suggest Kennedy was involved in the re-valuation, the acquisition had anything to do with any tax bill, or that Kennedy kept the proceeds (which went to an entity controlled by non-defendant Michael Auerbach). The "$420" was actually *$420,000* (rounded to nearest thousand), and represented the re-valued *aggregate* contingent consideration for three different acquisitions, audited by Deloitte. *See* Ex. 2, at 58, 77, F-36, F-51 (2019 10-K) (uncontradicted descriptions of acquisition and re-valuation). The First Opinion rejected similar conclusory accusations. First Op. 14 n.5.

applicable to the SAC yet entirely absent from the Second Opinion. *See* Def. Br. 20-21. The alleged fraud, on the other hand, makes no sense in context: Kennedy's overall holdings *increased* substantially over the class period,[23] and many of those shares were locked up until long after the purported fraud came to light, meaning that his interests were significantly aligned with investors' throughout the class period—he stood to lose far more stock value when the purported fraud inevitably came out than he is alleged to have gained from class-period sales. The Second Opinion's holding that a strong inference of scienter was alleged based on "plausible" stock-sale allegations and a highly implausible and unsupported long-con theory of motive violates both Second Circuit law and *Tellabs* and constitutes clear error.

## II.     Alternatively, the Court Should Certify the Second Opinion for Immediate Appeal.

Even if the Court were to find that the holdings discussed above were not erroneous, they raise controlling issues of law that warrant certification for immediate appeal: (i) whether "plausibility" under Rule 8 is the correct standard for evaluating falsity and/or scienter on a motion to dismiss securities claims; and (ii) whether "motive and opportunity" allegations alone— especially the weak ones alleged here—can show a strong inference of scienter under *Tellabs*.

Plaintiffs contend that the Second Circuit has decided these issues "over and over and over again," citing a handful of securities decisions that use the word "plausible" or recite the oft-quoted language that plaintiffs can establish scienter by showing either motive and opportunity or strong circumstantial evidence of recklessness. Opp. 24 (citing cases). But mere use of these words is not the same as a considered holding on these issues. As previously discussed, Plaintiffs cite no case— and Defendants do not know of one—holding that Rule 8's plausibility standard applies to securities fraud claims, or even considering that legal issue. Nor would one expect to find one—

---

[23] Plaintiffs' contrary assertion is wrong: even excluding the Share Exchange, Kennedy obtained 762,500 shares from vesting RSUs and stock options during the class period, over 100,000 shares more than he sold. *See* Ex.10 (Form 4s).

Rule 8 plainly does not govern securities fraud cases, since Congress intentionally set a higher pleading bar in the Reform Act. While Second Circuit securities decisions sometimes reference the concept of "plausibility"— derived from *Iqbal*, *Twombly*, and other non-securities decisions construing Rule 8 and Rule 12(b)(6)—those references are always combined with articulation *and application* of the Reform Act's and Rule 9(b)'s heightened pleading standards. Here, in sharp contrast, the Second Opinion does not evaluate the SAC under the Reform Act's and 9(b)'s particularity requirements—both its language and reasoning bespeak *application* of Rule 8. To the extent the Court believes this approach is correct under established law, Defendants respectfully ask that it certify this question for immediate appeal, as it is a controlling and outcome-determinative issue as to which precedential authority has consistently held the opposite.

Nor has the Second Circuit decided whether "motive and opportunity" alone can show a strong inference of scienter without violating *Tellabs*. The circuits are split on this important question: the First and Eighth Circuits have held plaintiffs can plead scienter with allegations of motive and opportunity alone; while the Third, Fifth, Ninth, and Tenth Circuits have held they cannot. Def. Br. 24. The Second Circuit has not yet weighed in but has indicated that its two-prong standard, which pre-dated *Tellabs*, must be construed consistent with that decision. *Id.* If the weak stock sale and long-con motive allegations here actually suffice to plead a strong inference of scienter under Second Circuit law—in spite of the many stronger non-culpable inferences—then the Second Circuit's two-prong test is incompatible with *Tellabs* and this controlling issue of law should be certified for immediate appeal.

## CONCLUSION

Defendants respectfully submit that each clear error identified above warrants reconsideration and dismissal of the SAC with prejudice. Alternatively, Defendants respectfully ask the Court to certify the Second Opinion for immediate appeal.

Dated: November 23, 2022

Respectfully submitted,

BAKER & HOSTETLER LLP

By:  */s/ Douglas W. Greene*

Douglas W. Greene (*pro hac vice*)
dgreene@bakerlaw.com
Zachary R. Taylor
ztaylor@bakerlaw.com
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200

Genevieve G. York-Erwin
gyorkerwin@bakerlaw.com
999 Third Avenue, Suite 3900
Seattle, WA 98104
Telephone: 206.566.7079

*Attorneys for Defendants*

11