UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GANESH KASILINGAM, Individually and                :
on Behalf of All Others Similarly Situated,        :
                                                   :
                *Plaintiffs*,                          :
                                                   :
                -against-                             :    20-cv-03459 (PAC)
                                                   :
TILRAY, INC. and BRENDAN KENNEDY,                  :    **OPINION & ORDER**
                                                   :
                                                   :
                *Defendants*.                         :
-----------------------------------------------------------------X

      Defendants Tilray, Inc. ("Tilray") and Brendan Kennedy (collectively, "Defendants"), move for reconsideration of the Court's partial denial of their motion to dismiss Plaintiffs' Second Amended Complaint ("SAC"). Plaintiffs filed this putative class action on May 4, 2020, alleging securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. Specifically, they allege that Defendants materially misrepresented aspects of Tilray's financials and its global co-marketing deal with Authentic Brands Group ("ABG" and the "ABG Agreement").

      On September 27, 2021, the Court granted Defendants' first motion to dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). *Kasilingam v. Tilray, Inc.* ("*Tilray I*"), No. 20-CV-03459 (PAC), 2021 WL 4429788, at *16 (S.D.N.Y. Sept. 27, 2021). In its opinion, the Court "recognize[d] that Plaintiffs may be able to cure the Amended Complaint's deficiencies," and therefore "grant[ed] Defendants' motion to dismiss without prejudice and with leave to replead." *Id.* at *8. On December 3, 2021, Plaintiffs filed the SAC. SAC, ECF No. 95. On February 2, 2022, Defendants again moved to dismiss. On

1

September 28, 2022, the Court granted in part and denied in part Defendants' motion to dismiss the SAC. *Kasilingam v. Tilray, Inc.* ("*Tilray II*"), No. 20-CV-03459, at *11 (PAC), 2022 WL 4537846 (S.D.N.Y. Sept. 28, 2022). Defendants now move for reconsideration pursuant to Federal Rule of Civil Procedure 54(b) and Southern District of New York Local Rule 6.3. The motion for reconsideration is **GRANTED** and based on the Court's reconsidered analysis, Defendants' second motion to dismiss is **GRANTED.**

## I. Legal Standard

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." *In re Molycorp, Inc. Secs. Litig.*, 13 Civ. 5697 (PAC), 2016 WL 3002424, at *2 (S.D.N.Y. May 23, 2016) (quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 (S.D.N.Y. 2011)). "Reconsideration of a court's prior decision is 'limited' by the doctrine of the law of the case: 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Matter of Bouchard Transp. Co.*, 14 Civ. 1262 (PAC), 2015 WL 13657786, at *1 (S.D.N.Y. Jan. 8, 2015) (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 167 (2d Cir. 2003)).

The party moving for reconsideration must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSK Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The Court will not redo its ruling "unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Official Comm.*, 322 F.3d at 167 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

2

A motion for reconsideration "may not be used to advance new facts, issues or arguments not previously presented to the Court," *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001), nor be used as a vehicle to introduce "new theories or adduce new evidence in response to the court's rulings." *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (quotations omitted). Such relief is appropriate, however, where a court detects need to "correct a clear error of law, as permitted by the law of the case doctrine." *Mallek v. Allstate Ins. Co.*, No. 22-86, 2023 WL 3513783, at *2 (2d Cir. May 18, 2023).

## II. DISCUSSION

The Court assumes familiarity with the facts of this case as laid out in detail in multiple opinions. *See Tilray I*, 2021 WL 4429788, at *1–5; *Tilray II*, 2022 WL 4537846, at *1–5. Defendants point to several alleged "clear errors of law" that they believe the Court committed in *Tilray II*. As discussed *infra*, the Court declines to address the bulk of Defendants' arguments. *See Town of Mamakating, N.Y. v. Lamm*, No. 15-CV-2865 KBF, 2015 WL 5311265, at *9 n.7 (S.D.N.Y. Sept. 11, 2015) (deciding a motion based on "the cleanest and clearest bases" and declining to address other arguments), *aff'd sub nom. Town of Mamakating, N.Y. v. Lamm*, 651 F. App'x 51 (2d Cir. 2016).

The Court, however, credits one argument presented by Defendants as a ground for reconsideration: an oversight in the Court's scienter evaluation of Plaintiffs' Section 10(b) and Rule 10b-5 claim. *See Bishop v. Best Buy, Co. Inc.*, No. 08 CIV. 8427 LBS, 2011 WL 4011449, at *8 (S.D.N.Y. Sept. 8, 2011) (granting reconsideration where the Court overlooked a party's argument).

When a plaintiff alleges claims under Section 10(b) and Rule 10b-5, "scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to

3

commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Loc. 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). "Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (quotations omitted). "Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 233 (S.D.N.Y. 2010) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)). Additionally, a plaintiff may allege that a defendant

> (1) benefited in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor . . . .

*In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 348 (S.D.N.Y. 2011) (quoting *South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 110 (2d Cir. 2009)).

### A. Controlling Precedent on Scienter

In *Tilray II*, the Court found that Plaintiffs had adequately pleaded scienter. Pursuant to *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007), the Court determined that Plaintiff's allegations regarding Defendant Kennedy's motives created an inference of scienter at least as compelling as the inferences offered by Defendants. *See Tilray II*, 2022 WL 4537846, at *8–9. The Court based this determination on the circumstances surrounding Kennedy's individualized trades, including their timing and volume, indicating he may have profited from the alleged misrepresentations. *Id.* at 9–10; *cf. Plumbers & Pipefitters Nat'l Pension Fund v. Tableau Software, Inc.*, No. 17 CV 5753 (JGK), 2019 WL 2360942, at *6 (S.D.N.Y. Mar. 4, 2019) (finding

4

scienter based on stock sales of individual defendants). As a competing inference, Defendants offered evidence of Kennedy's trades pursuant to several 10b5-1 plans. *Tilray II*, 2022 WL 4537846 at *9. The Court held that "the mere presence of a 10b5-1 plan is not a complete defense to scienter," particularly because the plans were entered into during the Class Period. *Id.* (citing *City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 565 F. Supp. 3d 478, 489 (S.D.N.Y. 2021)). The Court then held that the trades were suspicious enough to overcome Defendants' proposed inference of the 10b5-1 plan's probative value negating scienter. *Id.*

In doing so, the Court neglected aspects of Defendants' arguments and overlooked controlling Second Circuit precedent. *See Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343 (2d Cir. 2022). In *Bristol-Myers Squibb*, the Second Circuit affirmed the dismissal of the plaintiffs' 10(b) and 10(b)-5 claims, finding a failure "to adequately allege a material misstatement or omission or facts giving rise to a strong inference of scienter." *Id.* at 352. With respect to scienter, the Second Circuit determined that the defendants' stock trades were not unusual enough to warrant a finding of motive. The court concluded that "the vast majority of the sales were conducted pursuant to a 10b5-1 trading plan or were executed for procedural purposes, and therefore could not be timed suspiciously." *Bristol-Myers Squibb*, 28 F.4th at 355–56. It similarly concluded that the plaintiffs failed to allege suspicious timing of the plan—even though the defendant "entered into such plan during the putative class period"—because, crucially, the complaint itself did not allege that the plan was entered into in bad faith. *Id.* at 356 n.4.

In *Tilray II*, the Court did not address whether the SAC alleges Kennedy entered into the 10b5-1 plans in bad faith (which it does not) but relied solely on the suspicious timing of the 10b5-1 plans as they related to the class period. 2022 WL 4537846, at *9–10. Despite district court

case law on the matter,[1] the Second Circuit's precedent is controlling. *See Olaf Soot Design, LLC v. Daktronics, Inc.*, No. 15 CIV. 5024 (RWS), 2018 WL 6929176, at *2 (S.D.N.Y. Dec. 7, 2018) (granting reconsideration where "[c]ontrolling precedent compels th[e] finding"); *Am. Contex Corp. v. ELTE*, No. 96 CIV. 1514 (MBM), 1997 WL 540813, at *1 (S.D.N.Y. Sept. 3, 1997) (noting that courts in the Southern District are "bound by Second Circuit precedent."). The Court therefore erred in its analysis, and on this basis **GRANTS** Defendants' motion for reconsideration. *See Twine v. Powers*, No. 09 CIV. 7631 RWS, 2012 WL 3834082, at *3 (S.D.N.Y. Aug. 27, 2012) (granting reconsideration where the Court overlooked controlling law).

The Court now reanalyzes the SAC and finds that Plaintiffs failed to adequately plead scienter. A failure to plead scienter is fatal to their claim and therefore warrants dismissal. *See Tilray I*, 2021 WL 4429788, at *6 n.4 (declining to address all the elements of Plaintiffs' claims because they failed to allege scienter).

### B. Motive and Opportunity

Turning once again to Plaintiffs' allegations, this time applying *Bristol-Myers Squibb*, the Court can no longer say that Plaintiffs' allegations related to Kennedy's motive create a strong inference of scienter at least as compelling as those raised by Defendants. "Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud."

---

[1] *See City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 565 F. Supp. 3d 478, 489 (S.D.N.Y. 2021) ("10b5-1 trading plans that are entered into during the alleged fraudulent activity, as is alleged here, are not a complete defense to scienter[.]"); *George v. China Auto. Sys., Inc.*, No. 11 CIV. 7533 KBF, 2012 WL 3205062, at *9 (S.D.N.Y. Aug. 8, 2012) ("[W]here (as here) 10b5-1 trading plans are entered into during the class period, they are not a cognizable defense to scienter allegations on a motion to dismiss." (quotations omitted)). *But see In re DraftKings Inc. Sec. Litig.*, --- F.Supp.3d ----, 2023 WL 145591, at *35 (S.D.N.Y. Jan. 10, 2023) (finding 10b5-1 plans to be a complete defense to scienter even when entered during the class period).

*Kalnit*, 264 F.3d at 139. When that benefit is alleged to be through stock sales, a Court must analyze

> (1) the amount of net profits realized from the sales; (2) the percentages of holdings sold; (3) the change in volume of insider defendant's sales; (4) the number of insider defendants selling; (5) whether sales occurred soon after statements defendants are alleged to have known were misleading; (6) whether sales occurred shortly before corrective disclosures or materialization of the alleged risk; and (7) whether sales were made pursuant to trading plans such as Rule 10b5-1 plans.

*In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 523 (S.D.N.Y. 2020). In *Tilray I*, the Court noted that Kennedy's lack of financial benefit was crucial to its decision to dismiss the FAC. 2021 WL 4429788, at *7.

After Plaintiffs amended their complaint to include detailed descriptions of Kennedy's stock sales,[2] the Court in *Tilray II* noted that "[w]hile it is possible that Kennedy believed in the value of the ABG Agreement and did not intend to misrepresent the value of inventory, that story is not as plausible as Plaintiffs' *given Kennedy's stock sales* and the progression of his leadership at Tilray." 2022 WL 4537846, at *10 (emphasis added) (citing *In re Nevsun Res. Ltd.*, No. 12 CIV. 1845 PGG, 2013 WL 6017402, at *13 (S.D.N.Y. Sept. 27, 2013)). Thus, compared to the Court's opinion in *Tilray I*, Kennedy's proceeds from stock sales were a factor that weighed heavily in the Court's finding of scienter.

In light of *Bristol Meyers Squibb*, the Court finds that it weighed Kennedy's financial benefit too heavily in its analysis. By providing evidence that Kennedy traded pursuant to 10b5-1 plans, Defendants have offered at least one cogent inference of a non-culpable explanation for Kennedy's trades and his financial benefit during the Class Period for at least 12 out of the 14 trades at issue (that is, that those trades were innocently scheduled pursuant to 10b5-1 plans), and that inference is stronger than the one presented by Plaintiffs. *See* SAC ¶ 220; Greene Decl., Ex 5

---

[2] *See* SAC ¶¶ 220–26.

7

at 6-9, 13, 19-21, ECF No. 102-10; *see Bristol-Myers Squibb Co.*, 28 F.4th at 356 n.4 ("[T]he Complaint fails to sufficiently allege that the purpose of the [10b5-1] plan was to take advantage of an inflated stock price, so the Investors have failed to allege facts indicating that the plan was not given or entered into in good faith or was part of a plan or scheme to evade the prohibitions of the regulations." (cleaned up)). This narrows any potential untoward financial benefit received by Kennedy significantly.

Plaintiffs allege that Kennedy sold "34.0% of the shares available for sale at the beginning of the Class Period and 26.7% of the shares that were available to sell during the Class Period" for a total of 643,164 shares and $28,389,051.71. Pls.' Br. at 19, ECF No. 120; SAC ¶ 220. Of these trades, scheduled 10b5-1 plan trades accounted for approximately 274,278 shares and approximately $16 million in profit for Kennedy.[3] SAC ¶ 220. The explanation of the 10b5-1 plan thus makes Kennedy's unexplained stock sales less numerous, less lucrative, and less consistent within the Class Period, and therefore less probative of scienter—in timing, scale, and in number of shares sold. *See Skechers*, 444 F. Supp. 3d at 523 (articulating the factors a court may consider with respect to stock sales and motive). For example, even following Plaintiffs' logic and discounting the shares that Kennedy had no ability to trade, the total "suspicious" trades remaining account for only approximately 15% of the Kennedy's available shares. Under the case law of this district, this percentage of Kennedy's total shares is too small, on its own, to create an inference of scienter. *See In re DraftKings Inc. Sec. Litig.*, --- F.Supp.3d ----, 2023 WL 145591,

---

[3] In the SAC, Plaintiffs detail sales that occurred on March 1, 2019, April 1, 2019, December 11, 2019, January 13, 2020, and February 13, 2020—all of which occurred pursuant to 10b5-1 plans. SAC ¶ 220. The March sales netted a total of 37,139 shares and $6,598,146.65; the April sales netted a total of 37, 139 shares and $5,133,858.42; the December sales netted 100,000 shares and $1,830,000; the January sales netted 100,000 shares and $1,639,872.94; and the February sales netted 0 shares and $852,000. The sales would total an approximate 274,278 shares and $16,053,878. *See* Greene Decl., Ex 5 at 6-9, 13, 19-21, ECF No. 102-10.

at *35 (S.D.N.Y. Jan. 10, 2023); *see In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 291 (S.D.N.Y. 2006) (no motive where individual defendants sold 17.4% and 10.9% of their stock); *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 570 (no motive where only one individual defendant sold 20% of stock); *see also Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 155 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) (finding trade of 12% and 25% of outstanding shares insufficient, without more, to allege scienter).[4]

Absent sufficient allegations regarding Kennedy's financial benefit, Plaintiffs' arguments that he sought to be the leader of the cannabis world through the Aphria merger appear significantly weaker and fail to cure the deficiencies plaguing the FAC. *See Tilray I*, 2021 WL 4429788, at *7 (finding Plaintiffs failed to allege Kennedy's motive to defraud absent financial gain); *see also In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 185 (S.D.N.Y. 2003) (finding Plaintiff alleged motive where Defendants sought to acquire several companies *and* individual defendants received significant financial benefits). As the Court previously stated, "[m]otives that are generally possessed by most corporate directors and officers do not suffice." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 645 (S.D.N.Y. 2007) (quotations omitted). Kennedy's push of the Aphria merger and the ABG Agreement could "easily be a sign of simple ambition or run-of-the-mill greed as of fraud." *Id.* The Court relied heavily on Kennedy's suspicious trading practices to bolster Plaintiffs' allegations of motive in *Tilray II*. 2022 WL 4537846, at *10. If those trades are

---

[4] Plaintiffs' citation to *In re Farfetch Ltd. Securities Litigation* is not sufficient here. No. 19-CV-08657 (AJN), 2021 WL 4461264 (S.D.N.Y. Sept. 29, 2021), *aff'd sub nom. IAM Nat'l Pension Fund v. Farfetch Ltd.*, No. 21-2752-CV, 2023 WL 2879304 (2d Cir. Apr. 11, 2023). In *Farfetch*, the district court noted that the timing of a 10b5-1 plan can weaken its potency as a defense. *Id.* at *6. However, *Farfecth* is not inconsistent with *Bristol Meyers Squibb* because it (1) predates the case and (2) ultimately found a lack of scienter. *Id.*

not suspicious, the Court must find that Plaintiffs failed to establish an adequate motive from which the Court may infer scienter.

### C. Conscious Misbehavior and Recklessness

This, of course, does not end the Court's scienter analysis. The Court must now once again analyze whether Plaintiffs adequately alleged "a defendant's conscious misbehavior or recklessness, 'though the strength of the circumstantial allegations must be correspondingly greater.'" *Tilray I*, 2021 WL 4429788, at *9 (quoting *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 233 (S.D.N.Y. 2010)). There is a high bar that courts "have erected for conscious misbehavior or recklessness pleadings." *Id.* at *12.

"[S]ecurities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements. Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation." *Kalnit*, 264 F.3d at 142 (*Novak*, 216 F.3d at 308). This standard is a particularly demanding one, as a plaintiff must allege "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* (quoting *Honeyman v. Hoyt (In Re Carter–Wallace, Inc. Secs. Litig.)*, 220 F.3d 36, 39 (2d Cir. 2000)). As the Court previously stated, "[i]n the Second Circuit, a series of important limitations on the scope of liability for securities fraud based on reckless conduct have been imposed." *Tilray I*, 2021 WL 4429788, at *9 (quotations omitted). First, the Second Circuit does not allow allegations of "fraud by hindsight"; second, "corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects"; third, Plaintiffs must

10

"specifically allege[ ] defendants' knowledge of facts or access to information contradicting their public statements"; and finally, absent particularized fraudulent intent, GAAP violations are not probative of scienter. *Id.* The SAC does not clear this high bar.

As the Court did not reach this analysis in its opinion in *Tilray II* after finding adequate motive to support scienter, its analysis in *Tilray I* is more instructive. The Court in *Tilray I* determined Plaintiffs failed to meet the high bar of alleging "a state of mind approximating actual intent, and not merely a heightened form of negligence." *Id.* at *9–10 (quoting *Medis Inv. Grp. v. Medis Techs., Ltd.*, 586 F. Supp. 2d 136, 142 (S.D.N.Y. 2008), *aff'd*, 328 F. App'x 754 (2d Cir. 2009)).[5]

Specifically, the Court found that Plaintiffs failed to allege specific facts pertaining to Kennedy's state of mind. 2021 WL 4429788, at *10. In both complaints, Plaintiffs relied on a series of former employees that provided Confidential Witness ("CW") allegations. The Court in *Tilray II* relied upon the CW allegations in its falsity analysis,[6] despite the fact that the allegations were largely similar to those from the FAC. "In order for a court to credit the allegations of confidential witnesses, the witnesses must be 'described in the complaint with sufficient

---

[5] By contrast, in *Tilray II*, the Court determined that Plaintiffs adequately alleged motive and opportunity, and therefore alleged scienter. 2022 WL 4537846, at *9–10. The Court never addressed whether Plaintiffs alleged strong circumstantial evidence of conscious misbehavior or recklessness. Therefore, while the Court agrees with the Defendants that reconsideration is warranted, it disagrees that the decisions are inconsistent.

[6] As Plaintiffs articulate in their opposition to this reconsideration, the Court relied on the allegations of the confidential witnesses to establish falsity, and then relied on the stock sales to establish scienter. *See Tilray II*, 2022 WL 4537846, at *6–7, 9–10. Because the Court erred in its scienter analysis, it does not address the falsity of Defendants' statements in its current analysis. Therefore, the Court analyzes the allegations once again for the purposes of scienter from the perspective of the pleading standard as articulated in *Tellabs*, 551 U.S. at 320, and to determine whether *intent*, not falsity, has been pleaded with sufficient particularity. *Cf. In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1545 (LAK), 2019 WL 4257110, at *17 n.183 (S.D.N.Y. Sept. 9, 2019) ("A plaintiff alleging scienter must do more" than a plaintiff alleging falsity).

11

particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 305 (S.D.N.Y. 2019) (quoting *Novak*, 216 F.3d at 314). In *Tilray I*, the Court determined that the allegations of the CWs were sufficient to allege "the probability that [they] possess the information alleged." 2021 WL 4429788, at *10 (quotations omitted). It nevertheless determined that the facts alleged by the CWs were insufficient "to suggest that Kennedy or other Tilray decisionmakers subjectively felt the company's due diligence was lacking," or that Kennedy "actually knew or had been presented with information indicating that Tilray's trim was worthless." *Id.* at *10, 13. As such, the Court determined that the CW allegations "fail[ed] to clear the high bar" courts have established for conscious misbehavior or recklessness." *Id.* at *12.

Upon reconsideration, Plaintiffs have not sufficiently pleaded new facts related to the CWs between the FAC and the SAC to support the circumstantial evidence of Kennedy's intent to deceive the public. For one, Plaintiffs' CWs still fail to allege that Kennedy had any knowledge of the inventory discrepancies. In *Tilray I*, the Court held that "[e]ach [of Plaintiffs' claims] is built atop the faulty foundational premise that the Amended Complaint establishes that Defendants knew, or should have known, that much of their inventory was worthless." *Id.* at *13. In *Tilray II*, the Court determined that Plaintiffs allegation that the trim was worthless were adequate under Rule 9(b) to plead falsity; that sufficiency, however, does not carry over into the *Tellabs* scienter analysis. *Cf. In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1545 (LAK), 2019 WL 4257110, at *17 n.183 (S.D.N.Y. Sept. 9, 2019) ("A plaintiff alleging scienter must do more" than a plaintiff alleging falsity).

Even where, as the Court decided in *Tilray II*, Plaintiffs adequately alleged that the inventory analysis was false, the SAC contains no allegations that Kennedy *himself* was or should

12

have been on notice that the analysis was false. "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *See Woodley v. Wood*, No. 20 CIV. 2357 (ER), 2022 WL 103563, at *6 (S.D.N.Y. Jan. 11, 2022) (quoting *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 196 (2d Cir. 2008)), *aff'd sub nom. Rotunno v. Wood*, No. 22-502, 2022 WL 14997930 (2d Cir. Oct. 27, 2022). The one document Plaintiffs point to is a "flawed" Bill of Materials with errors that "carried over into the financial documents." SAC ¶ 52. There is no general allegation that Kennedy ever saw the Bill of Materials or knew of the errors, much less particularized allegations of his knowledge.

As for the ABG Agreement, in *Tilray I*, the Court held that "Plaintiffs do not allege, through [their confidential witness] or elsewhere, 'the kind of required specific factual allegations (by [confidential witnesses] or otherwise)' to suggest that Kennedy or other Tilray decisionmakers subjectively felt the company's due diligence was lacking, much less that they believed the deal to be worse for the company than advertised." *Tilray I*, 2021 WL 4429788, at *10 (quoting *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)). That logic still stands with respect to the SAC.

In addition to the conscious misbehavior allegations that the Court previously rejected, *see Tilray I*, 2021 WL 4429788 at *10–13, Plaintiffs point to several other categories of circumstantial evidence to bolster their scienter allegations: (1) Kennedy's statements on the valuation of trim (in a manner that would violate GAAP); (2) Kennedy referring to extract revenues as Tilray's favorite metric; (3) the volume of Tilray stock immediately after the share exchange; and (4) Tilray's use of stock as currency for acquisitions. These allegations remain insufficient to establish conscious misbehavior and recklessness.

13

With respect to Kennedy's statements on extract revenue and trim, even if his statements to the public were false, Plaintiffs must plead that Kennedy specifically "knew facts or had access to information suggesting that [his] public statements were not accurate." *Wachovia*, 753 F. Supp. 2d at 348. As the Court noted in *Tilray I*, "without 'fraudulent intent,' [] Plaintiffs' allegation that Tilray violated GAAP and its own accounting policies" cannot create an inference of scienter. 2021 WL 4429788 at *11 (quoting *Novak*, 216 F.3d at 309). It further noted that "the Court cannot infer from one quarter's disclosure an intent to defraud in prior quarters." *Id.* As for the use of stock in acquisitions and the increase in the volume of Tilray's trades, Plaintiffs do little to tie these vague allegations to the misrepresentations at issue, so they alone cannot sustain a finding of scienter. *See Patel v. L-3 Commc'ns Holdings Inc.*, 14-CV-6038 (VEC), 2016 WL 1629325, at *8 (S.D.N.Y. Apr. 21, 2016) ("Lead Plaintiffs almost exclusively attempt to allege scienter through vague and speculative allegations that they assert add up to circumstantial evidence of conscious misbehavior or recklessness.").

\* \* \*

In essence, the Court's previous *Tilray II* analysis was too lenient on the SAC. While Plaintiffs' story is plausible, it lacks sufficient factual allegations that Kennedy concretely benefitted during the Class Period. Plaintiffs' plausible allegations do not rise to the level of at least as plausible as the competing inferences required under *Tellabs*. Because Plaintiffs failed to allege scienter with respect to Kennedy, their allegations regarding Tilray's scienter necessarily fail as well. *See Vining v. Oppenheimer Holdings Inc.*, No. 08 Civ. 4435 LAP, 2010 WL 3825722, at *15 (S.D.N.Y. Sept. 29, 2010) ("As Plaintiffs have not adequately pleaded scienter, the Court declines to address Defendants' other grounds for dismissal of the Section 10(b) claim."). The

Court therefore erred in denying in part Defendants' motion to dismiss, and on reconsideration, grants the motion.

Further, because upon reconsideration the Court has determined that Plaintiffs failed to allege an underlying securities claim, it also reconsiders and dismisses Plaintiffs' claims under Section 20(a) and 20A of the Exchange Act. *See Bristol-Myers Squibb*, 28 F.4th at 356.

The Court recognizes that the court system has a strong interest in finality, and that motions for reconsideration are therefore, by design, an extraordinary remedy. *In re Emanuel*, 10 Civ. 2964, 2011 WL 2519200, at *1 (June 22, 2011). The standard is a demanding one. "'It is not enough . . . that [a party] could now make a more persuasive argument.'" *Green v. Beer*, No. 06 CIV. 4156 KMW/JCF, 2009 WL 3401256, at *2 (S.D.N.Y. Oct. 22, 2009) (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981)). "A court must instead have a clear conviction of error with respect to a point of law on which its previous decision was predicated." *Id.* (quotations omitted). The Court has identified a clear error of law from its previous decision and, very narrowly, chooses to reconsider its analysis. The Court declines to address Defendants other arguments as the Court's analysis here renders them moot, and the Court will not revisit its prior arguments absent necessity to correct a clear error of law or a manifest injustice.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss for reconsideration is **GRANTED**. Defendants' request for an interlocutory appeal, Plaintiffs' motion to lift the stay on discovery, and the parties' requests for oral argument are **DENIED** as moot. The Court provides Plaintiffs one final opportunity to amend the deficiencies in their complaint within 30 days of this Order, and therefore **GRANTS** Defendants' motion to dismiss without prejudice. The Clerk of the Court is directed to terminate the motions at ECF Nos. 110, 116, and 127.

Dated: New York, New York
      August 21, 2023

SO ORDERED

*Paul A. Crotty*

HONORABLE PAUL A. CROTTY
United States District Judge